Charles SAFFOLD, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–1003–CR–180.

Court of Appeals of Indiana.

Dec. 17, 2010.

over the speed limit. An officer asked Saffold if he had a gun and Saffold said he did not. Saffold leaned forward and placed his right hand near the floorboard, and the officer removed him from the vehicle because he thought Saffold might be reaching for a weapon. He handcuffed Saffold and patted him down. The officer found a magazine containing live ammunition, then searched the area of the vehicle where Saffold had placed his hand. He found a box of ammunition. The officer searched Saffold again, along with two other occupants of the vehicle, because he "still hadn't found a handgun." (Tr. at 25.) He found a gun in Saffold's waistband. Saffold did not have a permit for the gun, so the State charged him with carrying a handgun without a license.[1] At trial, Saffold filed a motion to suppress the evidence on the ground the search and seizure were illegal and to dismiss the charge against him. The court denied his motions and convicted him of the crime charged.

Valerie K. Boots, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Charles Saffold was subjected to two warrantless searches after he was stopped for speeding, and argues on appeal the evidence obtained in those searches should not have been admitted. We affirm.

## FACTS AND PROCEDURAL HISTORY

Saffold was stopped after police observed him driving seven miles per hour

## DISCUSSION AND DECISION

■ A trial court is afforded broad discretion in ruling on the admissibility of evidence, and we will reverse such a ruling only upon a showing of an abuse of discretion. *Howard v. State*, 862 N.E.2d 1208, 1210 (Ind.Ct.App.2007). We review a ruling on a motion to suppress in a manner similar to claims challenging the sufficiency of evidence. *Id.* We do not reweigh the evidence or judge the credibility of witnesses, but determine only whether there was substantial evidence of probative value to support the trial court's ruling. *Id.*

■ The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution protect an individual's privacy and possessory

1. Ind.Code § 35–47–2–1.

interests by prohibiting unreasonable searches and seizures. *Id.* Generally, to be lawful, a search must be conducted after police obtain a judicially issued search warrant. *Id.* When a search is conducted without a warrant, the State has the burden of proving an exception to the warrant requirement. *Id.* One such exception was established in *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which permits a police officer to conduct a limited search of an individual's outer clothing for weapons if the officer reasonably believes the individual is armed and dangerous. *Id.*

Saffold asserts the second pat-down search was illegal.[2] He notes all occupants were outside the vehicle, no weapons were found when the vehicle was searched, Saffold was handcuffed, possession of the ammunition found in his pocket and car was not a criminal offense, and two other officers had arrived on the scene. Therefore, "a reasonably prudent man would not be warranted in believing his safety or that of others was in danger." (Br. of Appellant at 8.)

We believe the second pat-down search was permissible under *Terry* because of concern for officer safety.[3] We cannot say the trial court abused its discretion to the extent it determined the discovery of live ammunition on Saffold's person immediate-

---

2. Saffold does not dispute the legality of the initial traffic stop or address the first pat-down search; however, he also asserts the warrantless search of his vehicle was illegal. In the first pat-down, police found ammunition on Saffold. As the warrantless search of his vehicle revealed only additional ammunition, but not a gun, the evidence police found in that search could not have contributed to Saffold's conviction of carrying a handgun without a license. As Saffold has not demonstrated he was prejudiced by the search of his vehicle, we address only the second pat-down search of his person. *See Esquerdo v. State,* 640 N.E.2d 1023, 1030 (Ind.1994) (finding Fourth Amendment error may be subject to constitutional harmless error analysis: "[w]here this Court can state beyond a reasonable doubt that the improperly admitted evidence did not contribute to the verdict, then the error is harmless.").

3. The State argued at trial that the searches were permissible on officer safety grounds, and that was the basis for the trial court's ruling on Saffold's objections. On appeal, the State further argues the searches were justified on the independent ground that the discovery of ammunition gave rise to "reasonable suspicion of criminal activity." (Br. of Appellee at 8.)

It did not. The State offers no explanation why the discovery of ammunition, something Saffold could presumably possess *legally,* serves to heighten suspicion something *illegal* was afoot. While the discovery of ammuni-

tion might have "heightened ... concerns for officer safety," (*id.*), we reject the State's assertion it also "heightened ... the degree of [the officer's] suspicion of crime." (*Id.*)

Nor does the record reflect the officer had any reason to believe Saffold's possession of a gun would have been illegal. It does not appear the officer knew at the time he subjected Saffold to the second pat-down that Saffold might not have a gun permit. We agree with Saffold that "[t]he existence of a gun is not the equivalent of commission of a crime or of criminal activity. The only arguable relevance of the possible existence of a gun in the car was on the question of officer safety." (Reply Br. of Appellant at 5–6.)

We accordingly decline the State's invitation to hold discovery of items a citizen may legally possess, without more, necessarily gives rise to reasonable suspicion that a citizen is probably doing something illegal and may therefore be subjected to progressively more intrusive searches. In *State v. Bulington,* 802 N.E.2d 435, 441 (Ind.2004), our Indiana Supreme Court reviewed decisions finding reasonable suspicion under the Fourth Amendment when an individual was found with cold medicine, an otherwise-legal item that could be used in the manufacture of methamphetamine. The Court noted four situations where reasonable suspicion had been found: the customer (1) bought a combination of methamphetamine precursors from one store; (2) bought a combination of precursors from several stores; (3) bought a

ly after Saffold denied he had a gun supported the officer's reasonable belief Saffold might be armed and dangerous.[4]

██ Nor was the second pat-down illegal under the Indiana Constitution. The language of Article 1, Section 11, the search and seizure provision of the Bill of Rights of the Indiana Constitution, is virtually identical to its Fourth Amendment counterpart. Section 11 provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

But our Indiana Supreme Court has interpreted and applied Section 11 independently from federal Fourth Amendment jurisprudence. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind.2001).

██ In resolving challenges asserting this section, we consider the circumstances presented in each case to determine whether the police behavior was reasonable. *Id.* The State has the burden of showing that, in the totality of the circumstances, the intrusion was reasonable. *Id.* In determining reasonableness under Section 11, we recognize that Indiana citizens are concerned not only with personal privacy but also with safety, security, and protection from crime. *Id.* When government intrusion is challenged under Section 11, therefore, reasonableness under the totality of circumstances may include consideration of police officer safety.

In *Mitchell*, Mitchell alleged an Art. 1, Sec. 11 violation in the form of an unrea-

---

large amount of one precursor and then tried to evade police pursuit by traveling at excessive speeds; and (4) bought one precursor and the arresting officer knew of defendant's previous involvement with methamphetamine.

> [W]e think it likely that we would find reasonable suspicion to exist in each of these circumstances. But none of these cases involved an officer conducting an investigatory stop of a person based solely on information that the person legally purchased a small to moderate amount of one precursor ... the respective courts relied on at least one other additional specific and articulable circumstance that, when combined with the purchase of one precursor, produced evidence sufficient to create an inference that the defendant's intention in engaging in the combination of activities was to possess chemical reagents or precursors for the manufacturing of methamphetamine.

*Id.* at 441–42. Thus, we decline to hold Saffold's legal possession of ammunition alone could give rise to reasonable suspicion of criminal activity to justify additional searches.

4. Saffold correctly notes that at the time of the search of the vehicle and the second pat-

down, all three occupants were outside the car, Saffold had been handcuffed, and two other officers were present. "In those circumstances, a reasonably prudent man would not be warranted in believing his safety or that of others was in danger." (Br. of Appellant at 8.) So, Saffold asserts, the officer should have completed the traffic stop by issuing a speeding ticket.

We acknowledge the recent holding in *Arizona v. Gant*, 556 U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), that police may not conduct a search incident to an arrest for a traffic offense where, as here, the arrestee has been secured and cannot access the interior of the vehicle. *Gant* does not control, as Saffold's search was not incident to his arrest, but was instead justified by officer safety concerns. The *Gant* Court noted an officer may search a vehicle passenger compartment when he has reasonable suspicion the arrestee is dangerous and might access the vehicle to obtain a weapon. *Id.* at ——, 129 S.Ct. at 1721.

To the extent the discovery of the ammunition gave the officer a reasonable concern for safety on the basis Saffold might be armed, that concern would not have been resolved by freeing Saffold from the handcuffs and returning him to his car.

sonably long detention while police sought a warrant. Police conducted a pretextual traffic stop and discovered bullets in Mitchell's pocket and a gun in his companion's purse. Mitchell's bullets did not match his companion's handgun; therefore, the State argued, the officer had reason to believe Mitchell might have had another handgun in the car.

Our Supreme Court noted that "[w]ere it not for the unusual circumstances of this case," including the weapon Mitchell's companion had, "it is possible that the reasonableness of Mitchell's detention would have been a close issue." *Id.* at 788. "The protracted detention at issue here, however, was not related to Mitchell's stop sign violation but to the ensuing discovery of the weapon and probable drugs in the possession of Mitchell's passenger" combined with police knowledge of narcotics investigations involving Mitchell and his companion. *Id.* It determined Mitchell's lengthy detention, under the totality of the circumstances, was not an unreasonable search or seizure in violation of the Indiana Constitution.

Nor, under the unusual circumstances of Saffold's case, can we say it was a violation for the officer to conduct a second pat-down search to determine whether Saffold had a gun after discovering ammunition on Saffold and in his vehicle.

We affirm the trial court's evidentiary rulings and denial of Saffold's motion to dismiss the charge of carrying a handgun without a license. As he asserts no other trial court error, we affirm the judgment as well.

Affirmed.

ROBB, J., and VAIDIK, J., concur.