# FOR PUBLICATION



**FILED**

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JEFFREY D. STONEBRAKER**
Clark County Chief Public Defender
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|                          |   |                     |
|--------------------------|---|---------------------|
| ANDRE GRAHAM,            | ) |                     |
|                          | ) |                     |
|    Appellant-Defendant, | ) |         |
|                          | ) |                     |
|      vs. | ) | No. 10A01-1108-CR-440 |
|                          | ) |                     |
| STATE OF INDIANA,        | ) |                     |
|                          | ) |                     |
|    Appellee-Plaintiff. | ) |              |

APPEAL FROM THE CLARK CIRCUIT COURT
The Honorable Vicki L. Carmichael, Judge
Cause No. 10D01-1006-FA-138

**July 27, 2012**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

Andre Graham appeals his convictions of Class A felony dealing in cocaine,[1] Class A felony possession of cocaine,[2] Class B felony dealing in a schedule III controlled substance,[3] and Class D felony possession of a controlled substance.[4]  He presents two issues for our review:

1.      Whether the trial court erred when it admitted into evidence drugs found as a result of the traffic stop because the seizure violated the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution; and

2.      Whether the State presented sufficient evidence Graham intended to deal the drugs in his possession.

We affirm.

## FACTS AND PROCEDURAL HISTORY[5]

On May 28, 2010, Jeffersonville Police Lieutenant Robert McGhee saw Graham participate in what the Lieutenant believed was a drug deal.  Lieutenant McGhee contacted Officer Leverett of the Jeffersonville Police Department, relayed his suspicion, and asked Officer Leverett to intercept Graham's vehicle.

---

[1] Ind. Code § 35-48-4-1(b).
[2] Ind. Code § 35-48-4-6(b)(3).
[3] Ind. Code § 35-48-4-2(b).
[4] Ind. Code § 35-48-4-7(a).
[5] We held oral argument in this case on June 19, 2012, at the Clark County Courthouse in Jeffersonville, Indiana.  We thank the Clark and Floyd County Bar Associations, Judge Daniel Moore, and Judge Moore's staff for their hospitality and preparation for our visit.  We also commend counsel on their advocacy.

Officer Leverett stopped Graham after he failed to signal a lane change. Officer Leverett saw there were two passengers in the vehicle with Graham; one seemed nervous and did not make eye contact, and the other appeared intoxicated. Officer Leverett asked Graham for his driver's license, registration, and proof of insurance, and discovered the vehicle was not registered to Graham.

Officer Leverett asked Graham to exit the vehicle and asked if Graham had drugs or guns. Graham stated he did not have a gun, but admitted he had hydrocodone in his pocket for which he did not have a prescription. Officer Leverett placed Graham under arrest, and Graham thereafter surrendered cocaine hidden in his buttocks.

The State charged Graham with four counts of Class A felony possession of cocaine, and one count each of Class A felony dealing in cocaine, Class B felony dealing in a schedule III controlled substance, and Class D felony possession of a controlled substance. Graham moved to suppress the drugs seized during the traffic stop, but the trial court denied his motion. During trial Graham objected to the admission of the evidence from the traffic stop, and the trial court overruled his objection and admitted the evidence. At trial, the State presented evidence Graham possessed over fifty hydrocodone pills, 4.4 grams of cocaine, and $132 in cash when he was arrested.

The jury found Graham guilty of both of the dealing charges, and one each of the possession charges. The trial court entered convictions on all four verdicts, but it sentenced Graham to an aggregate sentence of fifty years with fifteen years suspended for Class A dealing in cocaine and Class B dealing in a schedule III controlled substance.

3

**DISCUSSION AND DECISION**

1.      Admission of Evidence

Graham did not seek interlocutory review of the denial of his motion to suppress but instead appeals following trial. This issue is therefore "appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial." *Lundquist v. State*, 834 N.E.2d 1061, 1067 (Ind. Ct. App. 2005). Our review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection. *Id*. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id*. However, we must also consider the uncontested evidence favorable to the defendant. *Id*.

Graham argues the seizure violated the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Although the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution contain textually similar language, each must be separately analyzed. *State v. Washington*, 898 N.E.2d 1200, 1205-06 (Ind. 2008), *reh'g denied*.

a.      Fourth Amendment

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The parties do not dispute a traffic stop is akin to an investigative stop pursuant to *Terry v.*

4

*Ohio*, 392 U.S. 1 (1968). Under *Terry*, the unreasonableness of an investigative stop is measured by the officer's actions and whether those actions were "reasonably related in scope to the circumstances which justified the interference in the first place." *Id*. at 19-20. In *Florida v. Royer*, 460 U.S.491, 500 (1983), the United States Supreme Court held "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop" and "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Id.*

Graham acknowledges "the traffic stop was valid regardless of whether it was a pretext for investigation into drug activity, and the police were authorized to order him to exit the vehicle," (Br. of Appellant at 15), pursuant to *Whren v. United States*, 517 U.S. 806, 813 (1996). However, Graham notes, "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes upon interests protected by the Constitution." *Id*. (citing *Illinois v. Caballes*, 543 U.S.405, 407 (2005).) *Caballes* holds a seizure "that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete the mission." *Caballes*, 543 U.S. at 407.

Graham argues the traffic stop became unlawful because it was "prolonged beyond the time reasonably required to complete that mission." (Br. of Appellant at 15.) After Graham was stopped, Officer Leverett asked for his driver's license and registration. Officer Leverett checked the validity of the license plate and for warrants on Graham and the other occupants

5

of the car. Officer Leverett testified it could take up to fifteen minutes to obtain all of the

pertinent information from the dispatcher. After receiving the information from the

dispatcher, Officer Leverett began issuing Graham a citation for failure to signal a lane

change. While he was writing the citation, Officer Leverett asked Graham to exit the car and

asked whether he had guns or drugs in the vehicle. Graham admitted he was carrying pills he

possessed illegally, and Officer Leverett arrested him. Graham asserts the time of the traffic

stop – fifty-eight minutes – was "unreasonably prolonged prior to the officer inquiring about

the presence of weapons or guns." *Id*.

The State argues the length of the traffic stop, prior to Officer Leverett's questions,

was not unreasonable and thus did not violate Graham's Fourth Amendment rights. Officer

Leverett testified he asked Graham if he had any weapons or drugs while waiting for the

warrant checks to come back from dispatch on Graham and the two passengers, which he

testified was standard protocol during a traffic stop.[6] When Graham revealed to Officer

Leverett his possession of illegal substances, the nature of the stop went from that of a simple

traffic stop to a detention based on criminal activity and led to Graham's arrest. The State

cites *Washington*, 898 N.E.2d at 1205, in which the facts are similar to those in the instant

case:

> The officer's brief questioning as to whether the defendant had any weapons,
> drugs, or anything else that could harm the officer was not itself a search or
> seizure and thus was not prohibited by the Fourth Amendment. The defendant
> was not obligated to answer the questions, and his choice to do so and to
> disclose inculpatory information provided the basis for the officer's further

---

[6] Graham claims the traffic stop lasted fifty-eight minutes, which spanned from the time the vehicle was stopped, until the time Graham was booked. However, Graham was detained during part of that time.

6

request for permission to search the defendant's trouser pockets.

*Id*.

*Washington* controls. Graham was under no obligation to answer Officer Leverett's question regarding the presence of drugs or weapons in his car. It was his willingness to do so that resulted in his arrest, not the amount of time it took for Officer Leverett to complete the routine tasks associated with a traffic stop.

        b.      <u>Article 1, Section 11</u>

The language of Article 1, Section 11, the search and seizure provision of the Bill of Rights of the Indiana Constitution, is virtually identical to its Fourth Amendment counterpart. Section 11 provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

In resolving challenges asserting this section, we consider the circumstances presented in each case to determine whether the police behavior was reasonable. *Saffold v. State*, 938 N.E.2d 837, 840 (Ind. Ct. App. 2010). The State has the burden of showing the intrusion was reasonable under the totality of the circumstances. *Id*. In determining reasonableness under Section 11, we recognize Indiana citizens are concerned not only with personal privacy but also with safety, security, and protection from crime. *Id*. When government intrusion is challenged under Section 11, therefore, reasonableness under the totality of circumstances may include consideration of police officer safety. *Id*.

Officers are permitted to stop a vehicle when they observe a traffic violation, *Black v. State*, 621 N.E.2d 368, 370 (Ind. Ct. App. 1993), even if the officer may have an ulterior motive of furthering an unrelated criminal investigation. *Mitchell v. State*, 745 N.E.2d 775, 787 (Ind. 2001). The potential for unreasonable search and seizure associated with such a traffic stop is most likely to arise not in the routine handling of the observed traffic violation, but in additional investigatory conduct that may be excessive and unrelated to the traffic law violation. *Id.*

As in his Fourth Amendment argument, Graham takes issue with the amount of time between the initial stop and his arrest. Graham argues the time he was detained for the traffic stop was unreasonable because it is unclear "what the officer was doing related to the change of lane violation that would account for the other forty to forty-five minutes [considering the license and warrant check took ten to fifteen minutes] between the time of the stop and the time of the arrest." (Br. of Appellant at 12.) Graham asserts, based on the totality of the circumstances, he was detained for an unreasonable amount of time. However, based on Officer Leverett's testimony, it would seem Graham mischaracterizes the length of the stop. While it was fifty-eight minutes in duration total, Officer Leverett testified he questioned Graham while waiting for the warrant checks for Graham and the two passengers, and time passed after Graham admitted to possessing pills.

The State relies on *Washington*, in which our Indiana Supreme Court held an officer was permitted to ask questions of a detained motorist, including questions regarding the presence of drugs, 898 N.E.2d at 1206, and *Lockett v. State*, 747 N.E.2d 539, 543 (Ind.

2001), holding an officer may ask about the presence of weapons during a traffic stop.

We agree with the State, and hold Officer Leverett's questions did not unduly prolong the traffic stop to such an extent that it violated Graham's rights under the Indiana Constitution. While in the process of writing Graham a citation for failure to signal a lane change and waiting for the warrant checks to come back for Graham and his passengers, Officer Leverett asked if Graham had weapons or drugs. Graham did not have to answer Officer Leverett's question. He volunteered that he possessed pills, which admission led to his arrest and the extended duration of the traffic stop.

2.      Sufficiency of the Evidence

When reviewing sufficiency of evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the trial court's decision. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is the fact-finder's role, and not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* To preserve this structure, when we are confronted with conflicting evidence, we consider it most favorably to the trial court's ruling. *Id.* We affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the trial court's decision. *Id.* at 147.

To prove Graham committed Class A felony dealing in cocaine or Class B felony dealing in a Schedule III substance, the State was required to present evidence of Graham's

9

intent to deal the drugs. *See* Ind. Code §§ 35-48-4-1 and 2 (requiring possession of drug as well as the "intent to . . . deliver"). "Delivery" is "an actual or constructive transfer from one (1) person to another of a controlled substance, whether or not there is an agency relationship[.]" Ind. Code § 35-48-1-11. Graham concedes he possessed the cocaine and hydrocodone, but argues the State did not prove he intended to deal the drugs.

Graham notes there was no circumstantial evidence from which a reasonable fact finder could determine he had the intent to deal. However, we need not consider circumstantial evidence because Graham admitted at trial he intended to share the pills and cocaine with his friends:

> [Defense]: Did you possess that cocaine within [sic] the intent to sell that cocaine for a profit?
> [Graham]: No, Sir.
> [Defense]: But you did intend to share it with the two (2) other parties in the car?
> [Graham]: Yes. We all put in on it.
> [Defense]: You all put in on it?
> [Graham]: Yes.
> [Defense]: As well as the pills?
> [Graham]: Yes.

(Tr. at 201.)

As "delivery" is statutorily defined as an actual or constructive transfer from one person to another, Ind. Code § 35-48-1-11, we conclude there was sufficient evidence to prove Graham intended to deliver the drugs in his possession, thus supporting his convictions of dealing.

10

## CONCLUSION

Graham's federal and state constitutional rights were not violated during the traffic stop that resulted in his arrest for possession of and intent to deal hydrocodone and cocaine. As Graham testified he intended to deliver the drugs in his possession, there was sufficient evidence to prove he committed Class A felony dealing in cocaine and Class B felony dealing in a Schedule III substance. Accordingly, we affirm.

Affirmed.

BAKER, J., and BAILEY, J., concur.