# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**DONALD E. C. LEICHT**
Kokomo, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

**FILED**
Oct 19 2012, 9:22 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RODNEY KILLEBREW, II, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 34A02-1204-CR-303 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HOWARD SUPERIOR COURT
The Honorable William C. Menges, Judge
Cause No. 34D01-1103-CM-178

**October 19, 2012**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Rodney D. Killebrew, II (Killebrew), appeals his conviction for possession of marijuana, a Class A misdemeanor, Ind. Code § 35-48-4-11.

We reverse.

## ISSUE

Killebrew raises one issue on appeal, which we restate as follows: Whether the trial court abused its discretion when it admitted evidence discovered following a traffic stop of his vehicle.

## FACTS AND PROCEDURAL HISTORY

On March 3, 2011, Police Officer Chad VanCamp (Officer VanCamp) of the Kokomo Police Department was traveling northbound on Apperson Way in Kokomo, Indiana, when he observed a white Cadillac traveling southbound. The Cadillac had its turn signal activated but continued through an intersection without turning. Officer VanCamp thought that the driver might be impaired, so he initiated a traffic stop.

When Officer VanCamp exited his squad car, he immediately detected "an overwhelming amount of air fresheners, more than what the normal person would usually use" and suspected that the air fresheners might be masking agents used to hide the smell of illegal drugs. (Transcript p. 6). He approached the driver's side of the vehicle and spoke to Killebrew, who was the driver. When Officer VanCamp asked Killebrew about the turn signal, Killebrew told him that the signal sometimes stuck. Killebrew also admitted that he had initially thought the Officer was pulling him over for a seatbelt

2

violation because he had a malfunctioning seatbelt. Up until that point, though, Officer VanCamp had not noticed that Killebrew was not wearing a seatbelt.

Officer VanCamp then asked Killebrew to exit his vehicle and spoke to him about the overwhelming amount of air fresheners in the Cadillac. Killebrew's explanation was that he had just cleaned out his vehicle and that he thought he needed that many air fresheners. Officer VanCamp brought his canine over to the Cadillac to sniff its exterior for drugs. The canine alerted to the passenger door and the open window. As a result, Officer VanCamp searched the interior of the Cadillac and found two clear plastic bags containing plant material in the vehicle's middle console. The plant material later tested positive for marijuana.

On March 4, 2011, the State filed an Information charging Killebrew with possession of marijuana, a Class A misdemeanor, I.C. § 35-48-4-11(1). On February 9, 2012, a bench trial was held. During the State's direct examination of Officer VanCamp, Killebrew made a motion to suppress the evidence of the marijuana on the grounds that it was obtained pursuant to an illegal traffic stop. The trial court denied the motion and ultimately found Killebrew guilty as charged. On March 15, 2012, the trial court held a sentencing hearing and sentenced Killebrew to one year suspended, except for time served.

Killebrew now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

3

Killebrew requests that we reverse his conviction for possession of marijuana on the ground that the trial court abused its discretion in admitting evidence of the marijuana found in his Cadillac. Our review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection. *Graham v. State,* 971 N.E.2d 713, 716 (Ind. Ct. App. 2012). We do not reweigh the evidence, and we consider conflicting evidence in the light most favorable to the trial court's ruling. *Id.* However, we must also consider the uncontested evidence favorable to the defendant. *Id.*

## II. *Waiver*

As a threshold issue, the State argues that Killebrew did not preserve his claim because he failed to properly object to the evidence at trial. It is well-established that a motion to suppress is insufficient to preserve an error for appeal. *Jackson v. State,* 890 N.E.2d 11, 15 (Ind. Ct. App. 2008). A defendant must instead reassert his objection at trial contemporaneously with the introduction of the evidence to preserve the error. *Id.* Here, we cannot agree with the State that Killebrew failed to preserve his claim. Instead, it is clear that Killebrew's objection occurred after the bench trial had commenced and was contemporaneous with Officer VanCamp's testimony regarding his search of Killebrew's vehicle and his discovery of the marijuana. Although Killebrew characterized his objection as a motion, it was an objection, and it occurred at the proper point during the trial to preserve his claim. *See id.* We also reject the State's assertion that Killebrew did not preserve his claim for appeal because he stipulated to the

4

admission of the marijuana. Killebrew did not stipulate to the *admission* of the marijuana. He merely stipulated that the "green plant material" was marijuana so that the chemist would not have to testify. (Tr. p. 18). Thus, the stipulation was an agreement concerning the testimony an absent witness would give if he were present, not its admissibility.

### III. *Fourth Amendment*

Because we find that Killebrew has preserved his claim, we now turn to the merits of his argument. We note that he has not specified whether he appeals the trial court's admission of the evidence under the Fourth Amendment of the United States Constitution or Article I, section 11 of the Indiana Constitution and that he has not presented us with any legal authority relating to Article I, section 11. We have previously held that the failure to present any authority or independent analysis supporting a separate standard under the state constitution waives any state constitutional claims. *Lockett v. State,* 747 N.E.2d 539, 541 (Ind. 2001), *reh'g denied.* Accordingly, we will only analyze Killebrew's arguments under the standard for Fourth Amendment claims.

The Fourth Amendment to the United States Constitution protects the privacy and possessory interests of individuals by prohibiting unreasonable searches and seizures. *Riggle v. State,* 967 N.E.2d 522, 524 (Ind. Ct. App. 2012). It provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

5

U.S. CONST. amend IV. A traffic stop of a vehicle and temporary detention of its occupants constitutes a "seizure" within the meaning of the Fourth Amendment. *Reinhart v. State,* 930 N.E.2d 42, 45 (Ind. Ct. App. 2010). Thus, we must evaluate whether Officer VanCamp's seizure of Killebrew and his Cadillac during the traffic stop violated Killebrew's privacy rights under the Fourth Amendment.

A law enforcement officer must have probable cause to instigate a full-blown arrest or a detention that lasts for more than a short period. *Id.* However, a traffic stop is valid under the Fourth Amendment if it is based on an observed traffic violation or if the officer has reasonable suspicion that the person detained is involved in criminal activity. *State v. Rhodes,* 950 N.E.2d 1261, 1265-66 (Ind. Ct. App. 2011). A law enforcement officer's good faith belief that a person has committed a violation will justify a traffic stop, but an officer's mistaken belief about what constitutes a violation does not amount to good faith. *Ransom v. State,* 741 N.E.2d 419, 422 (Ind. Ct. App. 2000), *trans. denied.* Such discretion is not constitutionally permissible. *Id.* The State also argues that if we conclude that Killebrew's actions did not constitute a traffic violation and that Officer Vancamp did not have a reasonable suspicion that Killebrew was impaired, we should extend the "community caretaking" exception to the Fourth Amendment's protections to validate Officer VanCamp's traffic stop. We will address each of these points in turn.

A. *Traffic Violation*

Indiana courts have never addressed the issue of whether driving through an intersection with an activated turn signal without turning or changing lanes is a traffic

violation under Indiana law. Utilizing the rules of statutory construction, though, we conclude that it is not.

In applying a statute, our primary goal is to ascertain and give effect to the Legislature's intent. *Crowel v. Marshall Cnty. Drainage Bd.,* 971 N.E.2d 638, 645-46 (Ind. 2012). If a statute is unambiguous, *i.e.*, susceptible to only one meaning, we must give the statute its clear and plain meaning. *In re D.W.,* 969 N.E.2d 89, 94 (Ind. Ct. App. 2012). However, if a statute is susceptible to multiple interpretations, we must try to ascertain the Legislature's intent and interpret the statute so as to accomplish that intent. *Id.* In ascertaining the Legislature's intent, we consider the phraseology, nature, and design of the statute, and the consequences that flow from the reasonable alternative interpretations of the statute. *Id.* at 95. We presume that our Legislature intended the statutory language to be applied in a logical manner consistent with the underlying goals and policy of the statute. *Id.*

I.C. § 9-21-8-25 provides that "[a] signal of intention to turn right or left shall be given continuously during not less than the last two hundred (200) feet traveled by a vehicle before turning or changing lanes. []" I.C. § 9-21-8-26 also provides that: "a person may not stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal to a person who drives a vehicle immediately to the rear when there is opportunity to give a signal." The trial court concluded that these provisions prohibited Killebrew's use of his turn signal. We disagree. On their face, the provisions address the failure to use a turn signal, not the continued use of a turn signal. In addition, we have

7

not found any other statutory language expressly prohibiting Killebrew's use of his turn signal, and the State has not provided us with any. Accordingly, we conclude that the Legislature did not intend the use of a turn signal through an intersection to be a traffic violation.

This interpretation is consistent with court decisions in analogous situations in other jurisdictions. In *U.S. v. Miller,* 146 F.3d 274, 277 (5th Cir. 1998), the Fifth Circuit analyzed whether Miller had committed a traffic violation by flashing his turn signal without turning or changing lanes. Law enforcement officers stopped Miller, believing that he had violated a section of the Texas Transportation Code that stated:

> A person may not operate a motor vehicle equipped with a red, white, or blue beacon, flashing, or alternating light unless the equipment is: (1) used as specifically authorized by this chapter; or (2) a running lamp, headlamp, taillamp, backup lamp, or turn signal that is used as authorized by law.

*Id.* (quoting Tex. Transp. Code § 547.305(c)). The State argued that flashing a light without turning or changing lanes violated the code because it was not specifically "authorized by law[.]" *Id.* On appeal, the Fifth Circuit declined to interpret the phrase "turn signal that is used as authorized by law" as creating a series of violations for all uses not explicitly authorized by law. *Id.* at 278. Because the law enforcement officers did not have an independent reason for stopping Miller other than his turn signal, the Fifth Circuit held that the stop and subsequent search of Miller's vehicle violated the Fourth Amendment. *Id.* The court did not, however, address the issue of "whether any danger that might be associated with having a turn signal on provides any other basis of probable cause for a stop." *Id.* at 279.

8

In *U.S. v. McDonald*, 453 F.3d 958 (7th Cir. 2006), the Seventh Circuit addressed the same under an Illinois statute. The defendant, McDonald was stopped by law enforcement officers because he activated his turn signal but did not turn onto another street. *Id.* at 959. The officers believed that McDonald's use of his turn signal was a violation of state law. *Id.* at 960. The relevant statute provided that a car's "electric turn signal device . . . must be used to indicate an intention to turn, change lanes or start from a parallel parked position" and "must not be flashed on one side only on a parked or disabled vehicle or flashed as a courtesy or 'do not pass' signal to operators of other vehicles approaching from the rear." *Id.* (quoting 625 Ill. Comp. Stat. 5/11-804(d) (2005)). The statute did not, however, state that a driver must turn onto a different road once the turn signal is activated. *Id.* Accordingly, the Seventh Circuit held that McDonald's actions did not constitute a traffic violation and that, as a result, the stop of his vehicle violated the Fourth Amendment. *Id.* at 962.

B. *Reasonable Suspicion*

Although we conclude that Killebrew's use of his turn signal was not a traffic violation under Indiana law, we recognize that a violation is not a condition precedent to a lawful traffic stop otherwise supported by the facts. *Potter v. State,* 912 N.E.2d 905, 908 (Ind. Ct. App. 2009). As stated above, a traffic stop is also valid if a law enforcement officer has reasonable suspicion that the person detained is involved in criminal activity. *See Rhodes,* 950 N.E.2d at 1266. The issue of whether the continuous use of a turn signal without turning or switching lanes justifies a reasonable suspicion of

9

impairment to support a traffic stop is an issue of first impression in Indiana. The *McDonald* court did discuss the issue of reasonable suspicion, but only whether the police officer's belief that McDonald had committed a traffic violation was reasonable, not whether his use of a turn signal was a reasonable indication of impairment. However, in light of the importance of Fourth Amendment privacy protections, we conclude that Killebrew's actions, absent other indications of impairment, did not provide a reasonable suspicion of impairment.

In support of this conclusion, we note that it is well-settled that reasonable suspicion must be based on specific and articulable facts, not "an officer's general 'hunches' or unparticularized suspicions" that criminal activity may be afoot. *Davis v. State,* 858 N.E.2d 168, 172 (Ind. Ct. App. 2006). On review, this court considers whether the facts known by the police at the time of the stop were sufficient for a man of reasonable caution to believe that an investigation was appropriate. *Id.* Reasonable suspicion entails some minimum level of objective evidentiary justification. *Id.* "It is the requirement of reasonable suspicion that strikes a balance between the government's legitimate interest in traffic safety and an individual's reasonable expectation of privacy." *Id.*

Here, Officer VanCamp testified that he only observed Killebrew for a "short period of time"—three quarters of a block. (Tr. p. 9). During that short period of time, he did not notice any signs that Killebrew was impaired other than his use of his turn signal. In addition, while Officer VanCamp testified that the improper use of a turn

signal could be a sign of impairment, he also testified that it is common for people who are not impaired to go through intersections with their turn signals activated. When Killebrew's counsel asked, "Common for old people, too, have you seen them?" Officer Vancamp responded, "Absolutely. I've stopped them for it, too." (Tr. p. 9).

Based on the totality of the evidence, we conclude that without any other indication of impairment, Officer VanCamp did not have a reasonable suspicion of lawbreaking to stop Killebrew after only observing him activate his turn signal for three quarters of a block. If we were to hold that an action equally common among unimpaired drivers could justify a traffic stop, that ruling would be ripe for abuse and would not strike a reasonable balance between the government's legitimate interest in traffic safety and an individual's reasonable expectation of privacy. Accordingly, we hold that while driving through an intersection with an activated turn signal might be a legitimate factor in creating a reasonable suspicion that a driver is impaired, such use of a turn signal alone is not sufficient.

## C. *Community Caretaking Function*

Finally, the State argues that Officer VanCamp's seizure of Killebrew's Cadillac was justified pursuant to the "community caretaking" function of law enforcement. The "community caretaking" function is a narrow exception to the privacy protections of the Fourth Amendment that has been recognized in certain circumstances, such as during an inventory search. *See Colorado v. Bertine,* 479 U.S. 367, 381 (1987). It is premised on the "fact that extensive, and often noncriminal contact with automobiles will bring local

officials in 'plain view' of evidence, fruits, or instrumentalities of a crime, or contraband." *Cady v. Dombrowski,* 413 U.S. 433, 442 (1973). The Supreme Court described the function as follows:

> In the interests of public safety and as part of what the Court has called "community caretaking functions," automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.

*South Dakota v. Opperman,* 428 U.S. 364, 368-69 (1976).

The State acknowledges that Indiana courts have only recognized the community caretaking function within the context of impounding vehicles but now argues that we should extend this exception to Fourth Amendment privacy protections, as Officer VanCamp was attempting to ensure the safety of the public by stopping a potentially impaired driver. We decline to do so. In *Colorado,* the Supreme Court characterized the community caretaking function as a "narrow" exception to the protections of the Fourth Amendment. *See Colorado,* 479 U.S. at 381. The Supreme Court also clarified that the validity of a "search[] solely for the purpose of investigating criminal conduct" is "dependent on the application of the probable-cause and warrant requirements of the Fourth Amendment," rather than the community caretaking function. *Id.* at 371.

12

Here, Officer VanCamp clearly testified that he stopped Killebrew to investigate whether he was an impaired driver. Thus, his subsequent search was an extension of a criminal investigation and was not a product of an administrative caretaking function. As the Supreme Court noted that the application of the probable cause and warrant requirements of the Fourth Amendment are necessary when investigating criminal conduct, we will not extend the community caretaking function to justify a search conducted as a result of a criminal investigation. *See id.*

Because we find that Officer VanCamp's traffic stop of Killebrew was not justified based on a traffic violation, reasonable suspicion of criminal activity, or the community caretaking function, we conclude that the seizure violated the Fourth Amendment and the trial court abused its discretion in admitting the marijuana evidence obtained in the course of the unlawful search. Furthermore, the State was required to prove that Killebrew "knowingly or intentionally possess[ed] (pure or adulterated) marijuana, hash oil, hashish, salvia, or a synthetic cannabinoid" in order to convict him of possession of marijuana as a Class A misdemeanor. The State did not present any evidence of lawfully obtained marijuana, so we reverse Killebrew's conviction for possession of marijuana, a Class A misdemeanor. I.C. 35-48-4-11.

## CONCLUSION

Based on the foregoing, we conclude that the trial court abused its discretion when it admitted evidence obtained pursuant to an illegal traffic stop. We reverse Killebrew's conviction for possession of marijuana, a Class A misdemeanor, I.C. § 35-48-4-11.

13

Reversed.

BAILEY, J. and CRONE, J. concur