# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**DERICK W. STEELE**
Kokomo, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FREDERICK HERRON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 34A02-1203-CR-224 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HOWARD CIRCUIT COURT
The Honorable William C. Menges, Jr., Judge
Cause No. 34D01-1106-FA-541

**July 18, 2013**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

Frederick Herron appeals his convictions of two counts of Class A felony dealing in cocaine,[1] one count of Class B felony dealing in cocaine,[2] and a finding that he is an habitual substance offender.[3] He asserts the court abused its discretion when it admitted evidence seized during and after a traffic stop. We affirm.

## FACTS AND PROCEDURAL HISTORY

On June 22, 2011, the Howard County Drug Task Force used a confidential informant, J.G., to make a controlled purchase of cocaine. About 4:30 p.m., Detective Brad Reed recorded a phone call between J.G. and Mike Ingle. J.G. told Ingle she wanted fifty dollars worth of crack cocaine, and Ingle told her to come to a house on East Fischer Street in Kokomo. Police searched J.G., wired her with recording devices, recorded serial numbers of the money they gave her to buy the drugs, and dropped her off near Ingle's location.

J.G. rode a bicycle to the arranged meeting place. When she arrived, Ingle was smoking crack with several other people. J.G. gave Ingle $50, and he placed a phone call. After ending the call, Ingle told J.G. his supplier was on the way. Moments later, a white Chrysler Pacifica parked in the alley next to the house where J.G. and Ingle were. Ingle sat briefly in the passenger seat of the Pacifica, then returned to the house. He gave J.G. a rock of cocaine, she broke off a small piece for him, and she left. Police followed the Pacifica a short distance to record the license plate number and then circled back to pick up J.G., who

---

[1] One was based on the sale occurring within 1000 feet of a public park, *see* Ind. Code §§ 35-48-4-1(a)(1) & 35-48-4-1(b)(3), while the other was based on Herron possessing more than three grams of cocaine with an intent to deliver, *see* Ind. Code §§ 35-48-4-1(a)(2) & 35-48-4-1(b)(1).
[2] Ind. Code § 35-48-4-1(a)(1).
[3] Ind. Code § 35-50-2-10.

turned over the cocaine. A search confirmed J.G. did not have the purchase money or other drugs.

Shortly before that controlled purchase, the Task Force had received information that a person named Frederick Herron was selling cocaine in Kokomo from a white Chrysler Pacifica. Because Ingle's supplier had arrived in a car matching that description, police decided to attempt a second purchase from Ingle that day, to see if the white Chrysler Pacifica would arrive again after Ingle called his supplier. J.G. again called Ingle, who agreed to help her buy another $80 worth of cocaine. Ingle told J.G. to come to his house on Webster Street.

Officers once again searched J.G., placed a wire on her, gave her money, and sent her to meet Ingle. When J.G. arrived, Ingle was outside his house. J.G. gave Ingle the buy money, Ingle made a phone call, and Ingle told J.G. his supplier was on the way. A short time later, a white Chrysler Pacifica arrived. An officer determined the Pacifica was registered to Herron. Herron exited the Pacifica, talked to Ingle and to a man seated inside a blue vehicle, adjusted the Pacifica's headlight with Ingle's assistance, and then left. Ingle gave the cocaine to J.G, who broke off a piece for Ingle, kept the rest for herself, and left.

Before Herron travelled two blocks, police stopped Herron because the window tinting on Herron's car was too dark to permit officers to identify the gender or ethnicity of the driver.[4] As Officer Chad VanCamp approached the driver's window of Herron's vehicle,

---

[4] Officer VanCamp testified that, later in the traffic stop, he used a "tint meter" to check the tinting on Herron's windows, determined the tint was darker than permitted by law, and issued a citation for that violation. (Tr. at 27.)

Sergeant Tonda Cockrell approached the passenger window. Because of the window tint, the officers could not determine how many people were in the car, so they ordered Herron to roll down his windows. In plain view on the middle console of the car, Sergeant Cockrell saw some $20-dollar bills, which she believed was the money from the just completed purchase.

Officer VanCamp ordered Herron to exit the vehicle.[5] After "at least ten" requests, (Tr. at 248), Herron exited his car, and Officer VanCamp placed him in handcuffs and "read him the *Miranda* Warning." (*Id*. at 26.) Officer VanCamp then conducted a pat-down search of Herron and found a "large amount" of money in his right front pocket and "a smaller bundle" in his left pocket. (*Id*. at 249.) Herron said he was not employed and said his brother gave him $2000 to use as down-payment on a house. Officer VanCamp then walked his drug-sniffing dog around Herron's car. The dog indicated there were drugs near the passenger door of Herron's car.

Detectives used the dog's response, along with the controlled-buy evidence to obtain a search warrant for Herron's car. After the warrant was procured, police found a secret compartment in the back of the passenger seat that contained crack cocaine packaged for sale.

The State charged Herron with two counts of Class A felony dealing in cocaine, one count of Class B felony dealing in cocaine, and being an habitual substance offender. Herron moved to suppress the evidence collected pursuant to the traffic stop. The trial court denied

---

[5] Officer VanCamp testified that he asked Herron to exit the car because other officers had "already determined that he was going to be detained." (Tr. at 248.)

his motion and his request for interlocutory appeal. In a bifurcated trial, a jury found Herron guilty of all three dealing counts and then found he was an habitual substance offender. The court imposed concurrent sentences for the three felonies -- forty years for each Class A felony and twenty years for the Class B felony -- and imposed an eight-year habitual substance offender enhancement, for a cumulative sentence of forty-eight years.

## DISCUSSION AND DECISION

Herron asserts the police search of him and his vehicle was unconstitutional. Because the trial court denied Herron's request for interlocutory appeal of the denial of his motion to suppress and his trial proceeded to completion, we review whether the trial court's admission of evidence was an abuse of discretion. *See Graham v. State*, 971 N.E.2d 713, 716 (Ind. Ct. App. 2012) (interlocutory orders appealed after trial are reviewed for abuse of discretion), *trans. denied*. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id*. However, we must also consider the uncontested evidence favorable to the defendant. *Id*.

Herron argues the seizure of evidence violated both the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Although the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution contain textually similar language, each must be separately analyzed. *State v. Washington,* 898 N.E.2d 1200, 1205-06 (Ind. 2008), *reh'g denied.*

Herron acknowledges the police could pull over his car because the officer believed his window tint was darker than permitted by law. (Appellant's Br. at 7.) He claims,

5

however, the police unreasonably extended a valid traffic stop by removing him from his car and searching him because they did not have reasonable suspicion to conduct an investigatory stop or probable cause to arrest him. As the police had probable cause at the time he was removed from the car to arrest Herron for dealing cocaine, we need not address his other two arguments.

### 1. Fourth Amendment

The Fourth Amendment to the United States Constitution protects people from unreasonable searches and seizures. U.S. Const. Amend. IV.[6] The Fourteenth Amendment extended to state governments the Fourth Amendment's requirements for constitutionally valid searches and seizures. *Figert v. State,* 686 N.E.2d 827, 830 (Ind. 1997). A search conducted without a warrant is presumed unreasonable unless the State can demonstrate the search was permitted by one of the exceptions to the warrant requirement. *VanPelt v. State,* 760 N.E.2d 218, 221 (Ind. Ct. App. 2001), *trans. denied.* One exception to the warrant requirement is a search incident to a lawful arrest. *White v. State,* 772 N.E.2d 408, 411 (Ind. 2002). An arrest is lawful without a warrant when an officer has probable cause to support the arrest. *Griffith v. State*, 788 N.E.2d 835, 840 (Ind. 2003). Probable cause for an arrest exists when the officer has knowledge of facts and circumstances that would warrant a person of reasonable caution to believe the suspect committed a criminal act. *Id*.

---

[6] The Fourth Amendment to the United States Constitution provides:
> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

On an unknown date prior to June 22, 2011, the Howard County Drug Task Force received anonymous information that a person named Frederick Herron, who drove a White Chrysler Pacifica with dark-tinted windows, was distributing crack cocaine in the Kokomo area. Herron challenges the use of that tip for establishing probable cause for his arrest on the grounds the tip was not associated with any "indicia of reliability" and it "may have been stale" by June 22, 2011. (Appellant's Reply at 2.) However, this is not a situation where police took action based on a tip. *See*, *e.g.*, *Washington v. State*, 740 N.E.2d 1241, (Ind. Ct. App. 2000) (traffic stop based on uncorroborated anonymous tip is unconstitutional), *trans. denied*. Instead, the Task Force was investigating Ingle when the Pacifica arrived to deliver cocaine for the controlled buy. The Pacifica appeared at the first buy location just after Ingle's call to his supplier and just before Ingle delivered the crack to J.G. The Pacifica arrived at the second buy location and was registered to Herron. Those events demonstrate the tip was from a credible source and the information was not stale. *See Moultry v. State*, 808 N.E.2d 168, 172 (Ind. Ct. App. 2004) ("When significant aspects of the anonymous informant's prediction are verified, there is reason to believe not only that the anonymous informant was honest, but also that the anonymous informant's information is sufficiently credible . . . ."). Accordingly, the tip is one of the facts on which the police could rely when determining whether they had probable cause to arrest Herron. *See id.*

Herron asserts the "mere presence" of a white Pacifica at two locations where police were conducting a controlled buy cannot support probable cause. (Appellant's Br. at 10.) Herron was not, however, "merely present" at those locations during the controlled

7

purchases. Herron arrived at both locations shortly after Ingle called his supplier and ordered the cocaine J.G. requested. During the first buy, Ingle sat in the Pacifica and then returned to the house to give J.G. the cocaine. Soon after Herron left the location of the second buy, police saw what appeared to be the buy money in plain view in Herron's car. These facts, when combined with the anonymous tip, gave the police probable cause to arrest Herron for dealing cocaine. *See Jackson v. State*, 597 N.E.2d 950, 957 (Ind. 1992) (circumstantial evidence, much of which involved location of defendant's car in relation to car involved in crime, sufficient to support probable cause to arrest for bank robbery by masked men who could not be identified visually), *reh'g denied*, *cert. denied* 507 U.S. 976 (1993).

Upon proper arrest, police may search the arrestee and the area within the arrestee's immediate control. *White,* 772 N.E.2d at 411. Thus, after removing Herron from the car, Officer VanCamp was authorized to remove the money from Herron's pockets and to detain him while police obtained a search warrant for Herron's car. The court therefore did not abuse its discretion when it admitted the evidence collected after Herron was removed from his car. *See Fentress v. State*, 863 N.E.2d 420, 424 (Ind. Ct. App. 2007) (no error in admission of evidence collected where police had probable cause for arrest before they collected challenged evidence).

    b.    <u>Article 1, Section 11</u>

The language of Article 1, Section 11, the search and seizure provision of the Indiana Constitution, is virtually identical to its Fourth Amendment counterpart. Section 11 provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no

8

warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

This provision must receive a liberal construction in its application to protect the people from unreasonable search and seizure. *Brown v. State*, 653 N.E.2d 77, 79 (Ind. 1995).

As we resolve challenges asserting this Section, we consider the circumstances presented in each case to determine whether the police behavior was reasonable. *Saffold v. State*, 938 N.E.2d 837, 840 (Ind. Ct. App. 2010), *trans. denied*. The State has the burden of showing the intrusion was reasonable under the totality of the circumstances. *Id*. In determining reasonableness under Section 11, we recognize Indiana citizens are concerned not only with personal privacy but also with safety, security, and protection from crime. *Id*. When government intrusion is challenged under Section 11, therefore, the determination of reasonableness under the totality of circumstances may include consideration of police officer safety. *Id*.

Officers are permitted to stop a vehicle when they observe a traffic violation, *Black v. State*, 621 N.E.2d 368, 370 (Ind. Ct. App. 1993), even if the officer may have an ulterior motive of furthering an unrelated criminal investigation. *Mitchell v. State*, 745 N.E.2d 775, 787 (Ind. 2001). The officers could stop Herron's car based on their belief the tint on his windows was illegal. Once stopped, we believe the totality of the circumstances known to police demonstrate the reasonableness of the police officers' decision to arrest Herron for dealing crack cocaine. The two controlled purchases made by the confidential informant corroborated the anonymous tip, and an officer saw in plain view what appeared to be the

9

buy money in Herron's car. That evidence gave police reasonable belief Herron should be arrested for dealing cocaine, and it was reasonable under our State Constitution for police to search Herron incident to that arrest. *See Winebrenner v. State*, 790 N.E.2d 1037, 1041 (Ind. Ct. App. 2003) (search reasonable under Art. 1, Sect. 11 where incident to arrest supported by probable cause).

## CONCLUSION

Because the police officers had probable cause to believe Herron was delivering cocaine, his arrest on being removed from the car was permissible. The trial court therefore did not abuse its discretion in admitting evidence seized from that point forward. Accordingly, we affirm the trial court's judgment.

Affirmed.

NAJAM, J., and KIRSCH, J., concur.