# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**DAVID T.A. MATTINGLY**
Mattingly Legal, LLC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

May 31 2013, 9:23 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

## IN THE
## COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| KEVIN SPEER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1209-CR-748 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Randy J. Williams, Judge
Cause No. 79D01-1109-FB-34

**May 31, 2013**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

Kevin Speer appeals his convictions of and sentences for Class B felony conspiracy to manufacture methamphetamine,[1] Class B felony manufacturing methamphetamine,[2] Class D felony possession of methamphetamine,[3] Class A misdemeanor possession of paraphernalia,[4] Class D felony possession of two more chemical reagents or precursors with the intent to manufacture a controlled substance,[5] and Class D felony maintaining a common nuisance.[6] He presents six issues for our review:

1.      Whether the evidence from Speer's traffic stop was obtained in violation of his rights under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution;

2.      Whether the evidence obtained as a result of the search warrant was seized illegally;

3.      Whether the trial court abused its discretion when it denied Speer's motion for mistrial;

4.      Whether the State presented sufficient evidence Speer committed the crimes with which he was charged;

5.      Whether Speer's convictions of Class B felony manufacturing a methamphetamine and Class D felony possession of two more chemical reagents or precursors with the intent to manufacture a controlled substance

---

[1] Ind. Code § 35-48-4-1.1 (manufacturing methamphetamine); Ind. Code § 35-42-5-2 (conspiracy).
[2] Ind. Code § 35-48-4-1.1.
[3] Ind. Code § 35-48-4-6.1.
[4] Ind. Code § 35-48-4-8.3(a).
[5] Ind. Code § 35-48-4-14.5(e).
[6] Ind. Code § 35-48-4-13.

subject Speer to double jeopardy because the State used the same evidence to prove Speer committed both crimes; and

6.      Whether Speer's sentence was inappropriate based on his character and the nature of the offense.

We affirm in part, and reverse and remand in part.

## FACTS AND PROCEDURAL HISTORY

On September 25, 2011, Detective Chad Robinson of the Lafayette Police Department was conducting surveillance at the residence of David Balsar, who was suspected of participation in drug activity. Around 10:00 p.m., a red truck with an attached trailer left the residence. Detective Robinson followed the vehicle and noticed the license plates on both the trailer and the truck were partially obscured. He initiated a traffic stop.

Speer who was driving the vehicle and Jason Ferguson was his passenger. Detective Robinson discovered the plates on the truck were registered to a different vehicle. Back-up officers arrived at the scene, and Detective Robinson told Speer he would be conducting a dog sniff investigation of the vehicle. The dog alerted for the presence of narcotics near the driver's door.

Detective Robinson searched the cab of the truck and found a black pouch containing syringes, methamphetamine, and digital scales; a bag of syringes; two glass smoking pipes; and a device for smoking marijuana. He also found plastic aquarium tubing, more syringes, a funnel, measuring cups, Heet starting fluid, lithium batteries, coffee filters, and pseudoephedrine pills. The officers on scene recognized an odor consistent with that of a

3

methamphetamine manufacture lab. Detective Robinson filed an affidavit in support of a search warrant, which was issued, and the rest of the truck and trailer were searched. The subsequent search yielded additional items that could be used to manufacture methamphetamine.

The State charged Speer with Class B felony conspiracy to manufacture methamphetamine, Class B felony manufacturing a methamphetamine, Class D felony possession of methamphetamine, Class A misdemeanor possession of paraphernalia, Class D felony possession of two or more chemical reagents or precursors with the intent to manufacture a controlled substance, and Class D felony maintaining a common nuisance. The State also alleged Speer was an habitual substance offender. After a jury trial, Speer was convicted on all counts and found to be an habitual substance offender. The trial court sentenced Speer to an aggregate sentence of thirty-three and one-half years incarcerated.

## DISCUSSION AND DECISION

### 1. Admission of Evidence

Speer did not seek interlocutory review of the denial of his motion to suppress but instead appeals following trial. This issue is therefore "appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial." *Lundquist v. State*, 834 N.E.2d 1061, 1067 (Ind. Ct. App. 2005). Our review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection. *Id.* We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.* However, we must also

4

consider the uncontested evidence favorable to the defendant. *Id.*

Speer argues the search of his vehicle violated the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Although the Fourth Amendment and Article 1, Section 11 are textually similar, each must be separately analyzed. *State v. Washington*, 898 N.E.2d 1200, 1205-06 (Ind. 2008), *reh'g denied*.

    a.  <u>Fourth Amendment</u>

Speer argues Detective Robinson did not have reasonable suspicion to stop his vehicle, and thus the ensuing search violated Speer's Fourth Amendment rights. We disagree.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Under the Fourth Amendment, a police officer may stop a vehicle if he has reasonable suspicion a traffic law has been violated or other criminal activity is taking place. *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009). "An officer's decision to stop a vehicle is valid so long as his on-the-spot evaluation reasonably suggests that lawbreaking occurred. This discretion, however, does not extend to an officer's mistaken belief about what constitutes a violation as a matter of law." *Id.* at 870.

Detective Robinson testified he stopped Speer's vehicle because its license plate was not properly displayed. Indiana law requires:

5

(a) License plates shall be displayed . . .
       (1)  For a . . . trailer . . . upon the rear of the vehicle . . .
                             * * * * *
       (3)  For every other vehicle, upon the rear of the vehicle . . .
                             * * * * *
(b)  A license plate shall be securely fastened, in a horizontal position, to the vehicle for which the plate is issued:
       (1) to prevent the plate from swinging;
       (2) at a height of at least twelve (12) inches from the ground, measuring from the bottom of the license plate;
       (3) in a place and position that are clearly visible;
       (4) maintained free from foreign materials and in a condition to be clearly legible; and
       (5) not obstructed or obscured by tires, bumpers, accessories, or other opaque objects.

Ind. Code § 9-18-2-26.  Detective Robinson testified he "was unable to read the, clearly read the plate that was attached to the trailer.  It was partially obstructed, uh, either by a bumper or the rear light."  (Tr. at 4-5.)  Detective Robinson's testimony demonstrates he had a reasonable suspicion Speer had committed a traffic violation pursuant to Ind. Code § 9-18-2-26(b)(5).  Speer's arguments to the contrary are invitations to reweigh the evidence and judge the credibility of witnesses, which we cannot do.  *See Lundquist*, 834 N.E.2d at 1067 (appellate court does not reweigh evidence or assess credibility of witnesses).

       b.      <u>Article 1, Section 11</u>

Article 1, Section 11 provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

In resolving challenges involving this section, we consider the circumstances

6

presented in each case to determine whether the police behavior was reasonable. *Saffold v. State*, 938 N.E.2d 837, 840 (Ind. Ct. App. 2010). The State has the burden of showing the intrusion was reasonable under the totality of the circumstances. *Id.* In determining reasonableness under Section 11, we recognize Indiana citizens are concerned not only with personal privacy but also with safety, security, and protection from crime. *Id.*

Under Section 11, a police officer may stop a vehicle when he has reasonable suspicion the motorist has committed a traffic violation. *Mitchell v. State*, 745 N.E.2d 775, 787 (Ind. 2001). Detective Robinson testified the license plate on Speer's trailer was not properly displayed pursuant to Ind. Code § 9-18-2-26(b)(5), and thus he had reasonable suspicion to stop Speer's truck. Speer's arguments to the contrary are invitations for us to reweigh the evidence, which we cannot do. *See Lundquist*, 834 N.E.2d at 1067 (appellate court does not reweigh evidence or assess credibility of witnesses).[7]

2.      Search Warrant

Speer argues the trial court abused its discretion when it admitted evidence found as a result of the search warrant because the affidavit on which the search warrant was based was defective. Speer did not object to the admission of the evidence found as a result of the search warrant. "Failure to object to the admission of evidence at trial normally results in waiver and precludes appellate review unless its admission constitutes fundamental error." *Whatley v. State*, 908 N.E.2d 276, 280 (Ind. Ct. App. 2009), *trans. denied.* "The standard for

---

[7] Speer also argues the dog sniff violated his rights under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution because there was not reasonable suspicion for the traffic stop. As the traffic stop was valid, we need not address that allegation of error.

fundamental error is whether the error was so prejudicial to the rights of the defendant that a fair trial was impossible." *Boatright v. State*, 759 N.E.2d 1038, 1042 (Ind. 2001).

Pursuant to Ind. Code § 35-33-5-2, before a warrant can be issued, an affidavit must be filed with a judge:

> (1) particularly describing:
>     (A) the house or place to be searched and the things to be searched for;
>     or
>     (B) particularly describing the person to be arrested;
> (2) alleging substantially the offense in relation thereto and that the affiant believes and has good cause to believe that:
>     (A) the things as are to be searched for are there concealed; or
>     (B) the person to be arrested committed the offense; and
> (3) setting forth the facts then in knowledge of the affiant or information based on hearsay, constituting the probable cause.

When determining whether a search warrant should be issued:

> "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit … . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Spillers*, 847 N.E.2d 949, 952-53 (Ind. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). "The duty of the reviewing court is to determine whether the magistrate had a 'substantial basis' for concluding that probable cause existed." *Id.* (quoting *Gates*, 462 U.S. at 238-39, 103 S.Ct. 2317). "A substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause." *Id.* (citing *Houser v. State*, 678 N.E.2d 95, 99 (Ind. 1997)). A "reviewing court" for these purposes includes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision. *Id.* Although we review *de novo* the trial court's substantial basis determination, we nonetheless afford "significant deference to the magistrate's determination" as we focus on whether reasonable inferences drawn from the totality of the evidence support that determination. *Id.* (quoting *Houser*, 678 N.E.2d at 98-99).

*Hayworth v. State*, 904 N.E.2d 684, 694 (Ind. Ct. App. 2009). Search warrants are presumed

valid, and "where a presumption of the validity of a search warrant exists, the burden is upon the defendant to overturn that presumption." *Jones v. State*, 783 N.E.2d 1132, 1136 (Ind. 2003).

> If a defendant establishes by a preponderance of the evidence that "a false statement knowingly and intentionally, or with a reckless disregard for the truth, was included by the affiant in the warrant affidavit, . . . and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit."

*Stephenson v. State*, 796 N.E.2d 811, 815 (Ind. Ct. App. 2003), *reh'g denied*, *trans. denied* (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).

Speer takes issue with the reason Detective Robinson indicated in his affidavit for stopping Speer. In the affidavit, Detective Robinson wrote he stopped Speer's vehicle for "improper registration." (App. at 38.) However, in the same affidavit, Detective Robinson indicated he also discovered, on the alert from the dog, a black case containing "a digital scale, a metal vial that had a white powdery substance inside, and a syringe." (*Id.*) In addition, he found, in plain view, "some coffee filters, funnels, jars, tubing, and an ice pack[,] . . . two plastic bottles with an off-white crystalline substance inside, a bottle of drain opener, and two baggies with what appear[ed] to be salt." (*Id.*) Finally, Detective Robinson wrote he found "a bottle of starting fluid, several new syringes, two pipes that looked like meth pipes, and a marijuana pipe" on the driver's side of the vehicle. (*Id.*) Detective Robison indicated he "recognized that these items were materials commonly used in manufacturing methamphetamine." (*Id.*)

Detective Robinson testified his reference to "improper registration" was a mistake, and he stopped the vehicle because the license plates on the trailer and truck were not properly displayed, and Speer did not properly signal a turn. We need not decide if Detective Robinson knowingly misrepresented the nature of the stop, because even if that information is redacted, the judge could reasonably rely on the long list of methamphetamine manufacturing precursors found in plain view in Speer's vehicle. *See Stephenson*, 796 N.E.2d at 815 (even if improper material redacted, search warrant is still valid if it demonstrates probable cause). As the search warrant was properly granted, the admission of the evidence obtained therefrom was not fundamental error.

3.      Request for Mistrial

The trial court has discretion in determining whether to grant a mistrial, and its decision is afforded great deference on appeal because the trial court is in the best position to gauge the circumstances surrounding of the event and its impact on the jury. *Schlomer v. State*, 580 N.E.2d 950, 955 (Ind. 1991). Mistrial is an extreme remedy in a criminal case, which should be granted only when nothing else can rectify the situation. *Id*. To prevail on appeal, an appellant must show that he was so prejudiced that he was placed in a position of grave peril to which he should not have been subjected. *Id*. Grave peril is measured by the probable persuasive effect on the jury of the challenged action, evidence, or misconduct. *Owens v. State*, 714 N.E.2d 250, 252 (Ind. Ct. App. 1999).

In his brief, Speer states:

In our case [Speer] asserts he is entitled to a mistrial because the State, in front of the jury, and while questioning Jason Ferguson, a co-conspirator and

10

witness against [Speer], referenced that Mr. Ferguson had agreed as part of a plea agreement to take a polygraph examination upon request by the State. (T.T. Vol. 1, pg. 152). After the reference was made, counsel for [Speer] moved for a mistrial based upon that reference. (T.T. Vol. 1, pg. 153). The Court denied the motion.

(Br. of Appellant at 8.) The pages of the transcript cited in Speer's brief do not contain a motion for mistrial; instead they contain Ferguson's testimony and an inaudible sidebar conference with the judge at Speer' request:

| | |
|---|---|
| [State]: | And, uh, prior to this plea agreement, prior to your guilty plea, the plea agreement required that you provide what is called a clean up statement and that clean up statement would require that you tell the full truth about this case, correct? |
| [Ferguson]: | Yes. |
| [State]: | And it also required if we requested that you be subject to a polygraph examination? |
| [Ferguson]: | Yes mam. [sic] |
| [State]: | And an agreement you also have to testify truthfully? |
| [Ferguson]: | Yes. |
| [State]: | In any case, not only this case but in any potential case, right? |
| [Ferguson]: | Yes. |
| [State]: | And failing to testify truthfully or provide a full clean up statement if you were granted any probation time would be a violation of your probation, correct? |
| [Ferguson]: | Yes mam. [sic] |
| [State]: | Now you have not yet been sentenced on that case, we're set for a status hearing on July 27, 2012, correct? |
| [Ferguson]: | I believe so. |
| [State]: | Now also you have a prior conviction for check deception out of this county and were sentenced for that as a D felony on February 15, 2006, correct? |
| [Ferguson]: | Yes. |
| [State]: | And you also have a check deception as an A misdemeanor out of White County, sentenced for that on July 5, 2006, correct? |
| [Ferguson]: | Yes. |
| [State]: | OK. Now going back to September 25, 2011, the day of your and the defendant's arrest, do you recall what day of the week it was? |
| [Speer's Counsel]: | Judge, I'd like to approach the bench with counsel at this |

time please.

[Court]: You may.

**AT THIS TIME A SIDEBAR WAS CONDUCTED AT THE BENCH
AND IS IN [SIC] NOT FULLY AUDIBLE**
**DIRECT EXAMINATION CONTINUES**
**QUESTIONS BY [STATE'S COUNSEL]**

[State]: Mr. Ferguson, you were not subjected to, were not requested by the State to take a polygraph examination, correct?

[Ferguson]: No mam. [sic]

(Tr. at 152-54.)

It is well-settled Indiana law that "the results of a polygraph examination, or the offer or refusal to take a polygraph examination, are not admissible in criminal prosecution absent a waiver or stipulation by the parties. *Houchen v. State*, 632 N.E.2d 791, 794 (Ind. Ct. App. 1994). Speer argues he was put in grave peril of an unfair trial when the trial court denied his motion for mistrial based on the above exchange between Ferguson and the State. In support of his argument, Speer cites our holding in *Houchen*, in which we held Houcehn was subjected to grave peril of an unfair trial when one of the State's witnesses mentioned Houchen had been offered and had declined two polygraph tests. *Id.* at 793-4. However, *Houchen* is distinguishable because in the instant case because Ferguson stated the State did not ask him to take a polygraph test. Therefore, we hold Speer was not placed in grave peril of an unfair trial based on Ferguson's testimony.

4.      Sufficiency of the Evidence

When reviewing the sufficiency of evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the trial court's decision. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is the fact-finder's role, and not ours, to assess

12

witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* To preserve this structure, when we are confronted with conflicting evidence, we consider it most favorably to the trial court's ruling. *Id.* We affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the trial court's decision. *Id.* at 147.

> a.     <u>Conspiracy to Deal in Methamphetamine</u>

To prove Speer committed Class B felony conspiracy to deal in methamphetamine, the State was required to prove Speer agreed with another person to knowingly or intentionally manufacture methamphetamine, and either he or the other person in the conspiracy committed an act in furtherance of that agreement. Ind. Code § 35-41-5-2; Ind. Code § 35-48-4-1.1. The State presented evidence Speer and Ferguson stopped at Menard's to purchase Damp Rid, fish tank hose, and coffee filters, all precursors for the manufacture of methamphetamine. Then they went to Balser's house, where Speer helped Balser cook a batch of methamphetamine.

Speer's arguments implicating Ferguson as the person who purchased the precursors, or that Balsar was the only person who manufactured methamphetamine are invitations to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See Drane*, 867 N.E.2d at 146 (appellate court does not reweigh evidence or judge the credibility of witnesses).

13

b.      Dealing in Methamphetamine

To prove Speer committed Class B felony dealing in methamphetamine, the State was required to prove Speer knowingly or intentionally manufactured methamphetamine. Ind. Code § 35-48-4-1.1. The State presented evidence Detective Brock Russell discovered bottles in Speer's truck in which chemical reactions were ongoing. Detective Russell testified the chemicals discovered in these bottles were consistent with those used as part of the "one-pot" method of methamphetamine manufacturing. Speer's arguments to the contrary are invitations to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See Drane*, 867 N.E.2d at 146 (appellate court does not reweigh evidence or judge the credibility of witnesses).

c.      Possession Counts

To prove possession, the State must prove the defendant had actual or constructive possession of the item(s) in question. *Deshazier v. State*, 877 N.E.2d 200, 205 (Ind. Ct. App. 2007), *trans. denied*. The State proved Speer had constructive possession of those items.

For the State to prove constructive possession, it must prove the defendant had the intent and capability to maintain dominion and control over the contraband. *Lampkins v. State*, 682 N.E.2d 1268, 1275 (Ind. 1997), *modified on reh'g on other grounds*, 685 N.E.2d 698 (Ind. 1997). To prove intent to maintain dominion and control, there must be additional circumstances supporting the inference of intent. *Id*. Proximity to contraband in plain view is one such circumstance. *Id*. Constructive possession may also be proven by a defendant's incriminating statements, attempted flight or furtive gestures, or the comingling of

14

contraband with other items the defendant owns. *Henderson v. State*, 715 N.E.2d 833, 835–36 (Ind. 1999).

Speer acknowledges he "had the capability to maintain dominion and control over the methamphetamine from the simple fact he had a possessory interest in the vehicle." (Br. of Appellant at 25.) Further, Speer concedes the trier of fact "could also infer [Speer] had the intent to maintain dominion and control over contraband from [Speer]'s possessory interest in the premises, even when the possessory interest was not exclusive." (*Id.*) When access to the premises is non-exclusive, the State must show additional circumstances that point to the defendant's knowledge of the presence of contraband. Therefore, we look to the additional factors to support the inference of intent. *Lampkins*, 682 N.E.2d at 1275.

### i. Class D Felony Possession of Methamphetamine

To prove Speer committed Class D felony possession of methamphetamine, the State was required to prove he knowingly or intentionally possessed methamphetamine without a prescription. Ind. Code § 35-48-4-6.1. Speer argues he did not know what was in the case found on the ground outside the passenger side of the vehicle he was driving. The case contained methamphetamine and syringes. The State presented evidence Speer and Ferguson, who claimed ownership of the black case, had been using methamphetamine that day. Pipes used for smoking methamphetamine were found under Speer's seat, suggesting he and Ferguson had been using methamphetamine in the truck, and bottles containing methamphetamine precursors were found in the truck. The jury could have inferred Speer knew the black case contained methamphetamine. The State presented sufficient evidence to

15

support his conviction of Class C felony possession of methamphetamine. *See Floyd v. State*, 791 N.E.2d 206, 211 (Ind. Ct. App. 2003) (evidence sufficient to prove Floyd had constructive possession over methamphetamine when it was co-mingled with items used to ingest and manufacture methamphetamine), *trans. denied*.

## ii.      Class A Misdemeanor Possession of Paraphernalia

To prove Speer committed Class A misdemeanor possession of paraphernalia, the State was required to prove he knowingly or intentionally possessed an instrument he intended to use to introduce a controlled substance into his body. Ind. Code § 35-48-4-8.3(a). The State presented evidence pipes used to smoke methamphetamine were found under Speer's seat in the vehicle. Ferguson testified Speer smoked methamphetamine and did not shoot it. Speer does not deny the pipes belonged to him, but he asserts the syringes were not his. Therefore, the State presented sufficient evidence to prove Speer possessed drug paraphernalia when it presented evidence he possessed the pipes found under his seat.

## iii.      Class D Felony Possession of Two or More Chemical Reagents or Precursors with the Intent to Manufacture a Controlled Substance

To prove Speer committed Class D felony possession of two or more chemical reagents or precursors with the intent to manufacture a controlled substance, the State was required to prove Speer possessed two or more chemical reagents[8] with the intent to

---

[8] "Chemical reagents" are one or more of the following:
    (1) Ephedrine.
    (2) Pseudoephedrine.

manufacture methamphetamine. Ind. Code § 35-48-4-14.5. The State presented evidence the

vehicle contained bottles containing two or more methamphetamine precursors, and the

police found lithium batteries, another precursor, in the truck. There was evidence Speer and

(3) Phenylpropanolamine.
(4) The salts, isomers, and salts of isomers of a substance identified in subdivisions (1) through (3).
(5) Anhydrous ammonia or ammonia solution (as defined in IC 22-11-20-1).
(6) Organic solvents.
(7) Hydrochloric acid.
(8) Lithium metal.
(9) Sodium metal.
(10) Ether.
(11) Sulfuric acid.
(12) Red phosphorous.
(13) Iodine.
(14) Sodium hydroxide (lye).
(15) Potassium dichromate.
(16) Sodium dichromate.
(17) Potassium permanganate.
(18) Chromium trioxide.
(19) Benzyl cyanide.
(20) Phenylacetic acid and its esters or salts.
(21) Piperidine and its salts.
(22) Methylamine and its salts.
(23) Isosafrole.
(24) Safrole.
(25) Piperonal.
(26) Hydriodic acid.
(27) Benzaldehyde.
(28) Nitroethane.
(29) Gamma-butyrolactone.
(30) White phosphorus.
(31) Hypophosphorous acid and its salts.
(32) Acetic anhydride.
(33) Benzyl chloride.
(34) Ammonium nitrate.
(35) Ammonium sulfate.
(36) Hydrogen peroxide.
(37) Thionyl chloride.
(38) Ethyl acetate.
(39) Pseudoephedrine hydrochloride.

Ind. Code § 35-48-4-14-5(a).

17

Ferguson went to Menards to purchase other items used in the manufacture of methamphetamine. Finally, the State presented evidence Speer and Balsar prepared a methamphetamine-producing mixture before Speer and Ferguson left Balsar's residence. Speer's arguments to the contrary are invitations for us to reweigh the evidence, which we cannot do. *See Drane*, 867 N.E.2d at 146 (appellate court does not reweigh evidence or judge the credibility of witnesses).

     5.     <u>Double Jeopardy</u>

Article 1, Section 14 of the Indiana Constitution provides that "no person shall be put in jeopardy twice for the same offense." Two or more offenses are the same if, "with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). Double jeopardy may also be proven when there is a "reasonable probability that the evidentiary facts used by the fact finder to establish the essential elements of one offense may also have been used to establish the essential elements of the second offense." *Id.* at 53. Under the actual evidence test, we examine the evidence presented at trial to determine whether each challenged offense was established by separate and distinct facts.

Speer argues the jury relied on the same evidence to convict him of both Class B felony manufacture of methamphetamine and Class D felony possession of two or more precursors used to manufacture methamphetamine. He relies on *Iddings v. State*, 772 N.E.2d 1006, 1016 (Ind. Ct. App. 2002), we held:

18

It is impossible to knowingly or intentionally manufacture methamphetamine without first possessing the chemical precursors of methamphetamine with the intent to make the drug. Methamphetamine cannot be conjured out of thin air. The sole practical difference between these two offenses is that one may be guilty of possessing chemical precursors with intent to manufacture without actually beginning the manufacturing process, whereas the manufacturing process at the very least, have been started by a defendant in order to be found guilty of manufacturing methamphetamine.

*Id*. at 1016-17.

During closing arguments, the State argued, regarding Class B felony manufacture of methamphetamine:

So count two, the actual manufacturing, I have to prove that the defendant knowingly or intentionally manufactured methamphetamine pure or adulterated. And you're going to be given an instruction on the definition of manufacturing. This is what I'm talking about, the production, preparation, propagation, dissemination, distributing it, compounding, converging or processing of a controlled substance. Either directly or indirectly by extraction from substances of natural origin independently by means of chemicals [sic] synthesis or by a combination of extraction of chemical synthesis. It's a lot of wordy language. They were preparing it. They were compounding it. Those PowerAde bottles, that's why those are important. They're mixing it up and then the defendant took it out with him. And it tested positive for ammonia, one of the chemical reagents or precursors. And to do so, to have ammonia gas, you had to have in there ammonium nitrate or sulfate and lye. So there are two precursors right there.

(Tr. at 319-20.) The State argued regarding Class D felony possession of two or more precursors used to manufacture methamphetamine:

Now illegal drug lab, the defendant possessed two or more chemical reagents or precursors with the intent to manufacture a controlled substance. Again, only looking at the cab, we have the ammonium gas that comes from the combination of either ammonium sulfate or ammonium nitrate and lye, which are two precursors. So that's enough right there. We have those which had pseudoephedrine in it. That's three. Again, we have more lye. More lye. Again, [lithium] batteries, that's four. And the Heat [sic], that's ether. There's five. We only need two.

19

(*Id*. at 322.)  Based on the State's mention of the ammonium mixture containing two precursors for the manufacture of methamphetamine in its argument for both counts, there is a reasonable probability that jury used those pieces of evidence to  establish the essential elements of both crimes, violating double jeopardy.  Therefore, we vacate Speer's conviction of and sentence for Class D felony possession of two or more precursors used to manufacture methamphetamine and remand to the trial court for revision of the Abstract of Judgment consistent with this opinion.

6.      Appropriateness of Sentence

We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender.  *Williams v. State*, 891 N.E. 2d 621, 633 (Ind. Ct. App. 2008) (citing Ind. Appellate Rule 7(B)).  We consider not only the aggravators and mitigators found by the trial court, but also any other factors appearing in the record.  *Roney v. State*, 872 N.E.2d 192, 206 (Ind. Ct. App. 2007), *trans. denied, abrogated on other grounds by Bethea v. State,* 983 N.E.2d 1134, 1142 (Ind. 2013).   The appellant bears the burden of demonstrating his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

The trial court sentenced Speer to seventeen years for both Class B felony conspiracy to manufacture methamphetamine and Class B felony dealing in methamphetamine, to run concurrently; the seventeen year sentence was to run consecutive to all his other sentences, which were consecutive to each other: two and one-half years for Class D felony possession

20

of methamphetamine, one year for possession of paraphernalia, and two and one half years for Class D felony maintaining a common nuisance. The trial court then enhanced Speer's sentence for Class B felony dealing in methamphetamine by eight years by virtue of his status as an habitual substance offender. All together, the trial court sentenced Speer to an aggregate sentence of thirty-one years.[9]

When considering the nature of the offense, the advisory sentence is the starting point to determine the appropriateness of a sentence. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g* 878 N.E.2d 218 (Ind. 2007). The advisory sentence for a Class B felony is ten years, with a range of six to twenty years. Ind. Code § 35-50-2-5. The advisory sentence for a Class D felony is one and one-half years, with a range of six months to three years. Ind. Code § 35-50-2-7. There is no advisory sentence for a Class A misdemeanor, but a sentence may not exceed one year. Ind. Code § 35-50-3-2.

All of Speer's individual sentences were higher than the advisory sentence for each crime. One factor we consider when determining the appropriateness of a deviation from the advisory sentence is whether there is anything more or less egregious about the offense committed by the defendant that makes it different from the "typical" offense accounted for by the legislature when it set the advisory sentence. *Rich v. State*, 890 N.E.2d 44, 54 (Ind. Ct. App. 2008), *trans. denied*. Speer possessed a multitude of ingredients used to make methamphetamine, was "cooking" methamphetamine in his vehicle, and possessed

---

[9] As we vacated Speer's two and one-half years for Class D felony possession of two or more precursors required to manufacture methamphetamine, his aggregate sentence is reduced by that amount to thirty-one years.

methamphetamine and pipes to use the drug. We cannot say his sentence is inappropriate based on the nature of his offense.

When considering the character of the offender, one relevant fact is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). The significance of a criminal history in assessing a defendant's character varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id.* Speer has an extensive criminal history, dating back over twenty years. It includes many substance-related crimes such as possession of marijuana, possession of paraphernalia, and multiple driving while intoxicated and public intoxication offenses. Speer has served time in prison, in work release, and probation and violated the terms of each. Therefore, we cannot say Speer's sentence is inappropriate based on his character.

## CONCLUSION

We hold the search of Speer's vehicle did not violate his Fourth Amendment rights or his rights under Article 1, Section 11 of the Indiana Constitution. Similarly, the search warrant was properly granted because there existed probable cause to support the decision. Therefore, the trial court did not abuse its discretion when it admitted the evidence obtained from the vehicle search and incident to the search warrant.

Speer was not placed in grave peril of an unfair trial because the State did not make an impermissible reference to a polygraph examination. The State presented evidence sufficient to prove Speer committed all the crimes of which he was convicted, and Speer's sentence was not inappropriate based on his character or the nature of the crime. However, his

22

convictions of Class B felony dealing in methamphetamine and Class D felony possession of two or more precursors used to manufacture methamphetamine subjected him to double jeopardy because there was a reasonable probability the jury used the same evidence to decide Speer's guilt of both crimes, and we therefore vacate his conviction of and sentence for Class D felony possession of two or more precursors used to manufacture methamphetamine, and remand to the trial court for revision of the Abstract of Judgment to reflect this holding.

Affirmed in part, reversed and remanded in part.

BAKER, J., and MATHIAS, J., concur.