## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 30 2015, 6:33 am

Kevin S. Smith

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

John C. Bohdan
Deputy Public Defender
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jamie R. Aldred,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 30, 2015

Court of Appeals Case No.
02A03-1503-CR-108

Appeal from the Allen Superior Court.
The Honorable Frances C. Gull, Judge.
Cause No. 02D06-1305-FC-144

**Barteau, Senior Judge**

# Statement of the Case

[1]     Jamie R. Aldred pleaded guilty to neglect of a dependent, a Class C felony,[1] and maintaining a common nuisance, a Class D felony.[2]  The trial court allowed her to participate in a drug treatment program through Allen County's problem-solving drug court.  After Aldred violated the program's rules, she was discharged from the program and the court sentenced her to four years.  She appeals her sentence.  We affirm.

# Issue

[2]     Aldred raises one issue:  whether her sentence is inappropriate in light of the nature of the offenses and her character.

# Facts and Procedural History[3]

[3]     On May 8, 2013, officers arrived at Aldred's house in response to a complaint about activities in her garage.  She lived with her two young children (eighteen months old and eight weeks old, at that time) and her boyfriend.  Aldred told

---

[1] Ind. Code § 35-46-1-4 (2012).

[2] Ind. Code § 35-48-4-13 (2001).

[3] Indiana Appellate Rule 28(A)(2) states that transcript volumes must be consecutively paginated.  The transcript in this case consists of numerous hearings, mostly status conferences during Aldred's participation in the problem-solving court's drug treatment program.  The court reporter prepared twenty-four separate volumes, one for each hearing, none of which are numbered or consecutively paginated.  Most of the volumes do not exceed ten pages in length.  The lack of numbering and consecutive pagination has greatly hindered appellate review, and the court reporter is advised to comply with the rule in future cases.

the officers her boyfriend had the key to the garage, and she could not enter. She further stated that her house did not have running water.

[4] The officers entered the house with Aldred's permission. They saw a kitchen full of dirty, stacked dishes, and dog feces on the floor. They confirmed that the house lacked running water. Both of Aldred's children were wearing only diapers.

[5] There was a visitor in the house, and the officers detained her when she tried to leave. The officers searched the visitor and found items used to manufacture and consume methamphetamine, a baggie of methamphetamine, and a baggie of heroin.

[6] Under further questioning, Aldred admitted that she believed her boyfriend had been manufacturing methamphetamine in the garage for two months. She further admitted that she had purchased pseudoephedrine-containing medicine for her boyfriend and used synthetic cannabinoids three times a day. Officers obtained a search warrant for the garage and found active methamphetamine labs. An officer took Aldred's children to a hospital, where they were treated for malnutrition.

[7] The State charged Aldred with neglect of a dependent and maintaining a common nuisance. On June 3, 2013, Aldred pleaded guilty as charged. The trial court accepted her guilty plea and ordered her to participate in a drug treatment program under the supervision of Allen County's problem-solving drug court. Aldred signed an agreement that set forth the requirements of the

program. Among other requirements, she agreed to participate in a transitional living program and to comply with the requirements of the Indiana Department of Child Services (DCS). The agreement also provided that if Aldred successfully complied with the court's program, the felony charges against her would be dismissed.

[8] Aldred resided at Charis House, a transitional housing provider, during most of her participation in the drug treatment program. In August 2013, she violated the House's rules because her mother, who had been banned from the property, came to see her, and Aldred lied about it to the House's staff. Also in August 2013, Aldred's sobriety sponsor told court staff that Aldred had not complied with the sponsor's directives. In September 2013, Aldred missed a court date on an ordinance violation and a warrant was issued for her arrest. She was taken into custody immediately after a drug court hearing. Aldred remained in the program despite these violations.

[9] In October 2014, Aldred graduated from Charis House's program and got a job working forty hours per week. She continued to live at Charis House while still looking for suitable housing. During that period of time, she was sanctioned for leaving the county without permission.

[10] During a December 8, 2014 hearing, the court told Aldred that Charis House's staff and Aldred's case manager had concerns about her because she had not been working with her sponsor and had been late picking up her children from

daycare. The court characterized Aldred as "falling apart here just a little bit." Dec. 8, 2014 Tr. p. 6.

[11] During Aldred's participation in the problem-solving court's drug treatment program from June 2013 through December 2014, her interaction with her children gradually increased from supervised visitation twice a week to the children living with her five days a week at Charis House. On January 9, 2015, DCS removed the children from her care. Aldred had begun a relationship with a man who had been convicted of child molestation.

[12] On January 26, 2015, the State filed a petition to terminate Aldred's participation in the drug treatment program. The trial court held a hearing the same day. Aldred admitted that she had violated the terms of the program by lying to her case manager, by moving out of Charis House without first obtaining stable housing, and by violating DCS requirements. The court ended Aldred's participation in the problem-solving court's program.

[13] Next, the court sentenced Aldred to serve four years for neglect of a dependent and one and a half years for maintaining a common nuisance, to be served concurrently for an aggregate sentence of four years. This appeal followed.

## Discussion and Decision

[14] Aldred asks the Court to reduce her sentence to a maximum of two years executed, noting that she had no prior criminal history and had pleaded guilty. Article VII, section four of the Indiana Constitution authorizes Indiana's appellate courts to review and revise sentences. That authority is carried out

through Indiana Appellate Rule 7(B), which allows an appellate court to revise a sentence that is otherwise authorized by statute if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

[15] The principal role of appellate review under Rule 7(B) is to attempt to leaven the outliers, not to achieve a perceived "correct" result in each case. *Garner v. State*, 7 N.E.3d 1012, 1015 (Ind. Ct. App. 2014). Thus, the key question is not whether another sentence is more appropriate, but whether the sentence imposed in the instant case is inappropriate. *Williams v. State*, 997 N.E.2d 1154, 1165 (Ind. Ct. App. 2013).

[16] It is the defendant's burden to persuade us that the sentence is inappropriate. *Id.* Whether a sentence is inappropriate depends upon the culpability of the defendant, the severity of the crime, the damage done to others, and many other factors that are present in a given case. *Harman v. State*, 4 N.E.3d 209, 219 (Ind. Ct. App. 2014), *trans. denied*. We consider not only the aggravators and mitigators found by the trial court, but also any other factors appearing in the record. *Speer v. State*, 995 N.E.2d 1, 13 (Ind. Ct. App. 2013), *trans. denied*.

[17] At the time Aldred committed her crimes, the advisory sentence for a Class C felony was four years, the minimum sentence was two years, and the maximum sentence was eight years. Ind. Code § 35-50-2-6 (2005). Furthermore, the advisory sentence for a Class D felony was one and a half years, the minimum sentence was six months, and the maximum sentence was three years. Ind.

Code § 35-50-2-7 (2013). The trial court sentenced her to serve the advisory sentences for both crimes, concurrently, for an aggregate executed sentence of four years.

[18] Turning to the nature of the offenses, Aldred admitted that she allowed her boyfriend to make methamphetamine in her garage. Officers found active methamphetamine labs in the garage. Also, Aldred allowed visitors in her house who possessed items used to make methamphetamine, as well as baggies of methamphetamine and heroin. She admitted that she supported her boyfriend's drug manufacturing operation by purchasing medicine that contained pseudoephedrine.

[19] Aldred's house posed other dangers to children. The kitchen was filthy, with stacks of dirty dishes and no running water. There were dog feces on the floor. Both children were clothed only in diapers and required treatment for malnutrition.

[20] Turning to the character of the offender, it is true that Aldred has no prior convictions and pleaded guilty as charged. Her guilty plea is not entitled to much weight because she received a substantial benefit in exchange for her plea. Specifically, she was allowed to participate in the problem-solving court's drug treatment program, and if she had successfully completed the program, the felony charges against her would have been dismissed. *See Kinkead v. State*, 791 N.E.2d 243, 247-48 (Ind. Ct. App. 2003) (guilty plea not entitled to much

weight when defendant received benefit from pleading guilty and the evidence against the defendant was strong), *trans. denied*.

[21] In addition, Aldred's lack of a criminal record must be balanced against her admissions that she had allowed her boyfriend to make methamphetamine at her house for two months and had purchased pseudoephedrine-containing medicine to support his operation. Finally, despite the opportunities afforded by the problem-solving court's drug treatment program, Aldred continued to place her children at risk by beginning a relationship with a man who had been convicted of child molestation.

[22] Based on this evidence, Aldred has failed to demonstrate that her four-year advisory sentence is inappropriate.

# Conclusion

[23] For the reasons stated above, we affirm the judgment of the trial court.

Robb, J., and Pyle, J., concur.