## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 06 2017, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Corrine J. Lightner
Lindsay Van Gorkom
Deputy Public Defenders
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kevin D. Speer,<br>*Appellant-Petitioner,*<br><br>*v.*<br><br>State of Indiana,<br>*Appellee-Respondent.* | February 6, 2017<br><br>Court of Appeals Case No.<br>79A05-1608-PC-1736<br><br>Appeal from the Tippecanoe<br>Superior Court<br><br>The Honorable Randy J. Williams,<br>Judge<br><br>Trial Court Cause No. 79D01-1311-<br>PC-13 |

**Bradford, Judge.**

# Case Summary

[1]    In September of 2011, Appellant-Petitioner Kevin Speer and Jason Ferguson were observed leaving the home of David Balser, who was suspected by police of being involved in illegal drugs. Police stopped the truck in which Speer and Ferguson were driving, and officers indicated they would be conducting a dog sniff of the truck and attached trailer. When the dog indicated the presence of contraband, officers searched the truck and a black bag on the ground next to the truck, uncovering methamphetamine, drug paraphernalia, and numerous materials used in the consumption and manufacture of methamphetamine. A search conducted pursuant to a warrant uncovered more such evidence.

[2]    The State charged Speer with Class B felony conspiracy to manufacture methamphetamine, Class B felony methamphetamine manufacture, Class D felony methamphetamine possession, Class D felony possession of precursors, Class D felony maintaining a common nuisance, and Class A misdemeanor possession of paraphernalia and alleged that Speer was a habitual substance offender. A jury found Speer guilty as charged. On appeal, this court vacated Speer's conviction for possession of precursors, correspondingly reduced his aggregate sentence by two and one-half years, and otherwise affirmed his convictions and sentence.

[3]    Speer filed a petition for post-conviction relief ("PCR"), alleging that he had received ineffective assistance of trial and appellate counsel. After a hearing, the post-conviction court denied Speer's PCR petition. Speer contends that the

post-conviction court erred in denying his PCR petition.  Because we disagree, we affirm.

# Facts and Procedural History

[4]     The facts underlying this appeal are as follows:

On September 25, 2011, Detective Chad Robinson of the Lafayette Police Department was conducting surveillance at the residence of David Balsar [sic], who was suspected of participation in drug activity.  Around 10:00 p.m., a red truck with an attached trailer left the residence.  Detective Robinson followed the vehicle and noticed the license plates on both the trailer and the truck were partially obscured.  He initiated a traffic stop.

Speer who [sic] was driving the vehicle and Jason Ferguson was his passenger.  Detective Robinson discovered the plates on the truck were registered to a different vehicle.  Back-up officers arrived at the scene, and Detective Robinson told Speer he would be conducting a dog sniff investigation of the vehicle.  The dog alerted for the presence of narcotics near the driver's door.

Detective Robinson searched the cab of the truck and found a black pouch containing syringes, methamphetamine, and digital scales; a bag of syringes; two glass smoking pipes; and a device for smoking marijuana.  He also found plastic aquarium tubing, more syringes, a funnel, measuring cups, Heet starting fluid, lithium batteries, coffee filters, and pseudoephedrine pills.  The officers on scene recognized an odor consistent with that of a methamphetamine manufacture lab.  Detective Robinson filed an affidavit in support of a search warrant, which was issued, and the rest of the truck and trailer were searched.  The subsequent search yielded additional items that could be used to manufacture methamphetamine.

*Speer v. State*, 995 N.E.2d 1, 4 (Ind. Ct. App. 2013), *trans. denied*. The additional items found in the truck and trailer included bottles of lye; organic solvents; sulfuric acid bottles; Coleman fuel bottles; empty pseudoephedrine boxes and blister packs; ammonia; and receipts for the purchase of pseudoephedrine, lithium batteries, and lye. The State charged Speer with Class B felony conspiracy to manufacture methamphetamine, Class B felony methamphetamine manufacture, Class D felony methamphetamine possession, Class D felony possession of precursors, Class D felony maintaining a common nuisance, and Class A misdemeanor possession of paraphernalia and alleged that Speer was a habitual substance offender.

[5] Ferguson testified against Speer at his trial. Ferguson testified that he and Speer were using methamphetamine the day they were pulled over, they provided Balser with the ingredients to make methamphetamine, they purchased materials at Menard's, Balser was teaching Speer how to make methamphetamine, Shannon Carnahan was present at Balser's home, and he and Speer took some of the bottles with them when they left. Ferguson also testified that he met Balser through Kevin Douglas, Douglas co-owned the truck they were driving the day they were pulled over, they were on their way to Douglas's to see if he had any Coleman fuel, and Douglas and Balser were co-defendants in a separate criminal case.

[6] The jury heard that Ferguson had already pled guilty to Class D felony methamphetamine possession, Class D felony illegal drug lab, and to being a habitual substance offender; that the State would not oppose his participation in

the Forensic Diversion Program pursuant to the plea agreement; and that he had to provide a clean-up statement and testify in this case and that failure to do so would constitute a violation of the terms of his probation. The jury was not informed that Ferguson had been granted use immunity for his testimony or that more serious charges against him had been dropped pursuant to his plea agreement.[1]

[7] Carnahan, who was in a relationship with Balser, also testified. Carnahan testified that she had been at Balser's house, Balser was teaching Speer how to manufacture methamphetamine, people would bring ingredients to Balser's house for him to use in manufacturing methamphetamine, and Douglas also drove the truck used by Balser the day he was pulled over and searched. The jury also heard that Carnahan had been arrested and charged in a separate case with methamphetamine manufacture and illegal drug lab, she had pled guilty to Class B felony conspiracy to manufacture methamphetamine and been sentenced to thirteen years with three suspended, and she was required to testify truthfully against Speer. The jury was not told that Carnahan received use immunity for her testimony.[2]

[8] Detective Robinson and another officer testified that when Speer was informed that a dog would sniff his truck, Speer commented that police dogs "suck"

---

[1] There is no allegation or indication that the State withheld this information from Speer.

[2] As with Ferguson, there is no allegation or indication that the State withheld this information from Speer.

because, anytime he is stopped, the dogs always indicate the presence of contraband but nothing is ever found. Trial Tr. p. 86. And, during the State's opening and closing arguments, the prosecutor referred to the methamphetamine "subculture" of which Speer was allegedly a part. Tr. pp. 57-64, 315-23, 335-41.

[9] The jury found Speer guilty as charged, and the trial court sentenced him to an aggregate term of thirty-three and one-half years of incarceration. Attorney David Mattingly represented Speer on direct appeal and raised the following issues: (1) the validity of the traffic stop, (2) the validity of the search warrant, (3) the denial of his mistrial motion, (4) the sufficiency of the evidence, (5) a double jeopardy violation in his convictions for methamphetamine manufacture and possession of precursors, and (6) the appropriateness of his sentence. *Speer*, 995 N.E.2d at 3-4. This court accepted Speer's double jeopardy argument (vacating his conviction for possession of precursors and reducing his aggregate sentence by two and one-half years) and otherwise affirmed his convictions and sentence. *Id*. at 14.

[10] On October 15, 2013, Speer filed a PCR petition, which he amended on October 2, 2015. Speer argued that he received ineffective assistance of trial and appellate counsel in several respects. The post-conviction court held an evidentiary hearing on April 11, 2016. On July 7, 2016, the post-conviction court denied Speer's PCR petition in full.

# Discussion and Decision

Speer contends the post-conviction court erred in denying his PCR petition. Our standard for reviewing the denial of a PCR petition is well-settled:

> In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting its judgment. The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. To prevail on appeal from denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court.… Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, will its findings or conclusions be disturbed as being contrary to law.

*Hall v. State*, 849 N.E.2d 466, 468, 469 (Ind. 2006) (internal citations and quotations omitted).

# I. Ineffective Assistance of Trial Counsel

Speer contends that he received ineffective assistance of trial counsel in several respects. We review claims of ineffective assistance of counsel based upon the principles enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984):

> Under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), a claim of ineffective assistance of counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant so much that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 687, 694,

104 S. Ct. 2052; *Lowery v. State*, 640 N.E.2d 1031, 1041 (Ind. 1994). …. Failure to satisfy either prong will cause the claim to fail. *Vermillion v. State*, 719 N.E.2d 1201, 1208 (Ind. 1999).

*French v. State*, 778 N.E.2d 816, 824 (Ind. 2002).

Moreover, counsel is given wide discretion in determining strategy and tactics, and therefore courts will accord these decisions deference. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001). "A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. "Whether a lawyer performed reasonably under the circumstances is determined by examining the whole of the lawyer's work on a case." *Oliver v. State*, 843 N.E.2d 581, 591 (Ind. Ct. App. 2006), *trans. denied*.

## A. Failure to Inform Jury that Witnesses Received use Immunity and/or had Serious Charges Dropped

Speer contends that his trial counsel was ineffective for failing to inform the jury that Ferguson and Carnahan were granted use immunity[3] and that the State had dropped some criminal charges against Ferguson in return for his testimony. Under the circumstances of this case, however, Speer has failed to establish that he was prejudiced by any error his trial counsel might have made in this regard.

---

[3] Use immunity is "where the testimony compelled of the witness may not be used at a subsequent criminal proceeding[.]" *In re Caito*, 459 N.E.2d 1179, 1183 (Ind. 1984).

First, the jury was all but explicitly told that both Ferguson and Carnahan received a benefit in exchange for their testimony against Speer. The jury was informed that, pursuant to the terms of his probation, Ferguson had to testify truthfully or he would be in violation of those terms. Similarly, the jury was informed that Carnahan pled guilty in another case to Class B felony methamphetamine manufacture and, pursuant to the terms of her plea agreement, was required to testify truthfully. We believe the jury was more than capable of putting two and two together and concluding that both Ferguson and Carnahan had received a benefit in exchange for agreeing to testify in other cases, including Speer's. Moreover, the jury was aware that Ferguson was Speer's co-defendant in this case, knew what charges Speer was charged with, and knew that the crimes to which Ferguson pled guilty were lesser in severity. The jury almost certainly did not have to be told that serious charges against Ferguson were dropped in at least partial exchange for his testimony against Speer. In short, the jury was already aware that neither Ferguson nor Carnahan were totally disinterested witnesses.

Moreover, our review of the record indicates that the evidence of Speer's guilt was overwhelming even without Ferguson's and Carnahan's testimony. Detective Robinson followed Speer's truck as he left Balser's home, Balser being known to Detective Robinson because he had previously arrested him on a Clinton County warrant for methamphetamine manufacture. Police found extensive evidence of methamphetamine manufacture in the truck, including syringes and glass pipes, a piece of burnt aluminum foil, digital scales, a coffee

filter with methamphetamine on it, pill dough, tubing, funnels, a measuring cup, lithium batteries, multiple empty pseudoephedrine packaging, starter fluid bottles, bottles of lye, organic solvents, ammonia, sulfuric acid, Coleman fuel, an empty slat container, HCl generators, Walgreens receipts for the purchase of lithium batteries and pseudoephedrine, and a Menards receipt for bottles of lye. Speer could not plausibly claim to have been ignorant of the contents of the truck and trailer—or their nature—in light of the distinctive odor associated with methamphetamine manufacture emanating from the truck and surveillance video showing Speer purchasing lye at Menards. Even if Speer's trial counsel was deficient in failing to inform the jury of Ferguson's and Carnahan's use immunity and the dropped charges against Ferguson, Speer has failed to establish that he was prejudiced thereby.

## B. Failure to Object to Speer's Comment About Police Dogs

[17] Speer also contends that his trial counsel was ineffective for failing to object to his statement to police that their canine units "suck" because they had sniffed his vehicles in the past and indicated the presence of contraband even though none had ever been found. Speer contends that an objection on the ground that his statement was evidence of a prior bad act would have been sustained. *See* Ind. Evidence Rule 4004(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). Speer argues that his statement revealed to the jury that he had prior contacts with police, who suspected him of drug activity during these contacts, and that police dogs

had alerted on his vehicles. We conclude, however, that Speer's statement does not amount to evidence of a prior bad act, as it contains no admission that he had ever previously committed a crime or been found to be in possession of illegal drugs. Speer's statement is, if anything, an assertion that he had not been in possession of illegal drugs at various times in the past. Even if we take as true Speer's assertion that police dogs falsely indicate the presence of drugs, that does not reflect poorly on Speer. Because a 404(b) objection would not have been sustained, Speer has failed to establish ineffective assistance of counsel in this regard.

## C. Failure to Object to Certain Evidence and Comments About Methamphetamine "Subculture"

[18] Speer contends that his trial counsel was ineffective for failing to object to the prosecutor's comments during the State's opening and closing arguments regarding a "methamphetamine subculture" in which Speer was involved. Moreover, Speer contends that his trial counsel should have objected to evidence regarding the actions of Balser, Carnahan, and Ferguson and brief references to four other persons. As the State points out, however, Speer's trial counsel was not asked about why he did not object to the prosecutor's statements or any of the evidence in question at the hearing on Speer's PCR petition. Consequently, Speer has failed to produce any evidence that might overcome the presumption that the decisions were made for valid strategic reasons. *See, e.g.*, *Myers v. State*, 33 N.E.3d 1077, 1099 (Ind. Ct. App. 2015) ("It is Myers's burden to overcome the presumption that there were strategic

reasons for the decisions trial counsel made. If Myers cannot satisfy that burden, he cannot establish deficient performance."), *trans. denied*.

## D. Failure to Raise Alleged Double Jeopardy Violation

Speer contends that his trial counsel was ineffective for failing to argue that his convictions for Class D felony methamphetamine possession and Class D felony maintaining a common nuisance violate prohibitions against double jeopardy. In *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999), the Indiana Supreme Court held "that two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to … the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id*. at 49-50.

> To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

*Id.* at 53. "In determining the facts used by the fact-finder to establish the elements of each offense, it is appropriate to consider the charging information, jury instructions, and arguments of counsel." *Lee v. State*, 892 N.E.2d 1231, 1234 (Ind. 2008) (citing *Spivey v. State*, 761 N.E.2d at 832 (Ind. 2002); *Richardson*, 717 N.E.2d at 54 n.48).

[20] Based on evidence presented at trial, Speer's conviction for methamphetamine possession could only have been based on evidence that he constructively possessed the coffee filter containing methamphetamine residue that was found inside the metal canister inside the black case located just outside the passenger door of the truck. The charge that Speer maintained a common nuisance was that he knowingly or intentionally maintained a vehicle that was used by persons "to unlawfully use controlled substances; or for unlawfully keeping, offering for sale, selling, delivering, or financing the delivery of controlled substances, or items of drug paraphernalia[.]" Direct Appeal Appellant's App. p. 27; *see also* Ind. Code § 35-48-4-13 (now Ind. Code § 35-45-1-5). To support this conviction, the State presented evidence that Speer and Ferguson used methamphetamine in the truck at various times that day before obtaining the methamphetamine found on the coffee filter, used the truck to purchase and transport items they needed in methamphetamine manufacture, and had paraphernalia in the truck, and that Speer took methamphetamine manufacturing bottles from Balser's residence and transported them in the truck. Moreover, the prosecutor's argument with respect to the maintaining a common nuisance charge did not mention the methamphetamine found on the coffee filter but focused entirely on evidence of previous methamphetamine use and the transport of manufacturing materials.

[21] We conclude that there was no reasonable possibility that the jury relied on the same actual evidence to sustain both guilty verdicts. In short, the evidence used to support the two convictions does not seem to overlap at all, much less to the

extent that it is reasonably possible that the actual evidence used to establish all of the essential elements of one crime was used to establish all of the essential elements of the other. Based on the evidence presented and arguments of the prosecutor, Speer has failed to establish that a double jeopardy challenge to his convictions for methamphetamine possession and maintaining a common nuisance would have been successful. Speer has failed to establish that he received ineffective assistance of trial counsel.

## II. Ineffective Assistance of Appellate Counsel

[22] We review claims of ineffective assistance of appellate counsel using the same standard applicable to claims of trial counsel ineffectiveness. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000). The petitioner must show that appellate counsel was deficient in his performance and that the deficiency resulted in prejudice. *Id*. Ineffective assistance claims at the appellate level of proceedings generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Bieghler v. State*, 690 N.E.2d 188, 193-95 (Ind. 1997). Speer's claims fall into the second category, waiver of what he contends were meritorious claims.

### A. Failure to Raise Methamphetamine "Subculture" Comments and Evidence

[23] Speer contends that his appellate counsel was ineffective for failing to challenge the prosecutor's comments about a "methamphetamine subculture" on direct appeal or evidence regarding the activities of persons other than Speer. Because

neither the comments nor evidence was objected to below, the claim could only have been made on direct appeal as one of alleged fundamental error.

> Appellate courts may, on rare occasions, resort to the fundamental error exception to address on direct appeal an otherwise procedurally defaulted claim. But fundamental error is extremely narrow and available only when the record reveals a clearly blatant violation of basic and elementary principles, where the harm or potential for harm cannot be denied, and which violation is so prejudicial to the rights of the defendant as to make a fair trial impossible.

*Jewell v. State*, 887 N.E.2d 939, 942 (Ind. 2008).

[24] We conclude that Speer has failed to establish that this issue has any merit, much less that it is clearly stronger than the issues his appellate counsel did raise. We see nothing particularly wrong in arguing that Speer was a member of the "methamphetamine subculture" in a case where he was charged with conspiracy to manufacture methamphetamine. Furthermore, because the State alleged that Speer was part of a conspiracy, the actions of the other members of this conspiracy were relevant, even members not specifically named in the charge. Speer cites to no law requiring the State to mention all members of an alleged conspiracy in a charging information, and we are aware of none.

[25] With that in mind, the only individuals other than Speer whose conduct was mentioned in any significant detail were Ferguson, Carnahan, Balser, and Douglas, and all of them were directly connected to this case and the charged crimes. Ferguson, who was Speer's co-defendant, and Carnahan, were eyewitnesses who testified to Speer's involvement in methamphetamine

manufacture and provision of Balser with necessary ingredients. The record shows that Balser was teaching Speer how to manufacture methamphetamine, Speer and Ferguson had just left Balser's house when they were stopped, Douglas was co-owner of the truck, and Speer and Ferguson were on their way to see if Douglas had any Coleman fuel. All of this evidence is plainly relevant to establish that Speer was a member of a conspiracy to manufacture methamphetamine.

[26] Speer also challenges the mentions of four other persons, including three who were charged as co-defendants in Carnahan's case and one other, the person who allegedly introduced Balser and Carnahan. The mentions of these persons was very brief and contained no details of any crimes alleged against them. Any negative inferences the jury might have drawn from the brief mention of four persons is a matter of pure conjecture. Because Speer has failed to establish error in this regard, much less fundamental error, he has failed to establish that challenging the so-called "methamphetamine subculture" evidence on fundamental error grounds would have been successful.

## B. Failure to Raise Alleged Double Jeopardy Violation

[27] We have already concluded that Speer's trial counsel was not ineffective for failing to raise a double jeopardy claim regarding his convictions for methamphetamine possession and maintaining a common nuisance. Because Speer has failed to establish that this claim has merit, he cannot have been prejudiced by the appellate counsel's failure to raise it on appeal. Speer has failed to establish that he received ineffective assistance of appellate counsel.

[28] We affirm the judgment of the post-conviction court.

Brown, J., and Pyle, J., concur.